UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

_____

VIECURA, INC.,                                  :
                                                :
                                                :
                          Plaintiff,            :       Consol. Court No. 21-00154
                                                :
              v.                                :
                                                :
UNITED STATES,                                  :
                                                :
                          Defendant.            :
_____           :


## <u>ORDER</u>

Upon consideration of plaintiff's motion to exclude the testimony and report of defendant's expert witness Dr. Radhakrishnaiah Parachuru (Dr. Parachuru); and upon consideration of defendant's response in opposition thereto and other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is, denied; and it is further

**ORDERED** that Dr. Parachuru shall be permitted to present expert witness testimony on behalf of defendant in support of our position.



_____
                JUDGE


Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

———————————————————————
VIECURA, INC.,                             :
                                           :
                                           :
                    Plaintiff,             :        Consol. Court No. 21-00154
                                           :
          v.                               :
                                           :
UNITED STATES,                             :
                                           :
                    Defendant.             :
———————————————————————

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE
TESTIMONY OF DEFENDANT'S EXPERT WITNESS DR. PARACHURU**

---

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
*Attorneys for Defendant*
Tel. No. 212-264-0480 or 9230

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................. 2

I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE THE
      TESTIMONY'S OF DEFENDANT'S EXPERT WITNESS DR. R. PARACHURU ......... 2

      A. Dr. R. Parachuru's Expertise And Experience Shows That He Is An Expert In Textile
         Technology And Textile Manufacturing And Design ....................................................... 4

      B. Dr. R. Parachuru's Expert Opinion Regarding Viecura's Fixation Pant Product Is
         Based On Reliable Methodologies And Experience  ..................................................... 10

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Amco Ukrservice & Prompriladamco v. Am. Meter Co*,
  No. CIV.A.00-2638, 2005 WL 1541029 (E.D. Pa. June 29, 2005)............................................. 3

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  807 F.3d 1283 (Fed. Cir. 2015) ........................................................................................... 3, 4

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
  No. C10-861 RSM, 2015 WL 11201216 (W.D. Wash. Jan. 30, 2015) ............................... 15, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)............................................................................................................... 2, 3

*Kumho Tire Co.v. Carmichael*, 525 U.S. 137 (1999)
  526 U.S., 119 S.Ct. 1167.................................................................................................. *passim*

*Monsanto Co. v. David*,
  516 F.3d 1009 (Fed. Cir. 2008) .................................................................................................. 4

*Simod America Corp. v. United States*,
  872 F.2d 1572 (Fed.Cir. 1989) ................................................................................................. 11

*Teran v. Coloplast Corp.*,
  633 F. Supp. 3d 1103 (N.D. Ill. 2022)................................................................................. 15, 16

*United States v. McPhilomy*,
  270 F.3d 1302 (10th Cir.2001) ................................................................................................. 13

*United States v. Univar USA Inc.*,
  294 F. Supp. 3d 1314 (Ct. Int'l Trade 2018) ............................................................... 2, 3, 10, 17

*Yarchak v. Trek Bicycle Corp.*,
  208 F. Supp. 2d 470 (D.N.J. 2002) .................................................................................... 13, 14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| VIECURA, INC., | : |
| | : |
| | : |
| Plaintiff, | :    Consol. Court No. 21-00154 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE
<u>TESTIMONY OF DEFENDANT'S EXPERT WITNESS DR. PARACHURU</u>**

Defendant respectfully submits this memorandum in opposition to plaintiff Viecura,

Inc.'s (Viecura) motion to exclude or limit the testimony of defendant's expert witness Dr.

Radhakrishnaiah Parachuru (Dr. Parachuru).  *See* Plaintiff's motion to exclude or limit testimony

of Defendant's expert witness Dr. Parachuru (Pl. Mot.), ECF No. 30.

In its motion, Viecura argues that the Court should exclude Dr. Parachuru's expert

witness testimony because he lacks the experience in "textile product design and manufacture"

and "performed no testing or scientific study with respect to the merchandise which is the subject

of this case" to be qualified as an expert, and based his report on  "visual observation and tactile

handling of samples of the merchandise at bar, and other garments."  *See* at Pl. Mot. at 1.

Evident from his experience and education, Dr. Parachuru is qualified to testify as an expert in

textile technology and textile manufacturing including textile design.  His testimony will be helpful

to the Court to determine whether the textile design features of the merchandise at issue, *i.e.* the

"fixation pants"[1], exhibit the same features that are found in commodity (*i.e.* commonly available for retail sale) stretch-to-fit knit underwear for the general public. Dr. Parachuru also has specific and relevant experience with incontinence pants design. This knowledge makes him uniquely qualified to provide testimony on design solutions for incontinence as compared with designs that are common in regular commodity underwear. For the reasons that follow, plaintiff's motion should be denied.

**ARGUMENT**

**I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS DR. PARACHURU**

Consideration of expert testimony is guided by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. Rule 702 states that expert testimony is admissible when "(a) the expert's scientific, technical or *other specialized knowledge* will help the trier of fact to understand the evidence or to determine a fact in issue." (emphasis added). Under *Daubert*, the trial court acts as "gatekeeper" to ensure all expert testimony admitted is not only relevant but reliable. *Daubert*, 509 U.S. at 589.

In *United States v. Univar USA Inc.*, 294 F. Supp. 3d 1314, 1328 (Ct. Int'l Trade 2018), this Court addressed the factors that it may consider in determining whether expert testimony is reliable. The *Univar* Court explained that The Supreme Court in *Daubert* identified several factors the court may consider in determining reliability: "(1) whether a theory or scientific

---

[1] The Government identifies the underpants at issue as "fixation pants" because that is how they are identified in the consolidated complaint. *See* Consol. Complaint – ECF No. 10. The Government, by using the term "fixation pants" to describe the product at issue, does not admit or concede any functionality related to that description other than that possessed by regular stretch-to-fit underwear.

technique can or has been tested; (2) whether it 'has been subjected to peer review and publication'; (3) whether the specific scientific technique has a 'known or potential rate of error'; and (4) whether the theory or technique is generally accepted in the 'relevant scientific community.'" *Id*. at 1328 (quoting *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire*, 526 U.S. at 149–150). The *Univar* Court continued by explaining that:

> This list of factors, however, "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167. Indeed, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786, and the trial judge has broad latitude when deciding how to determine reliability, *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167. "Because it is usually impossible to subject nonscientific theories to experimentation," the court "should concentrate on the expert's experience, rather than methodology." *Amco Ukrservice & Prompriladamco v. Am. Meter Co*, No. CIV.A.00-2638, 2005 WL 1541029, at *2 (E.D. Pa. June 29, 2005) (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

294 F. Supp. 3d at 1328 (citing *Daubert,* 509 U.S. at 593-594 and *Kumho Tire*, 526 U.S. at 152 (1999)).

In *Univar*, the Court explained that plaintiff's witness, Dr. Henry B. McFarland, an economist, testified, in sum and substance, that he had expertise in economics, had dealt with transportation issues and transshipment, and also worked on matters involving the chemical industry. 294 F. Supp. 3d at 1328. Given this testimony, the Court found that Dr. McFarland was "qualified to give the opinions mentioned above" including opinions on "transshipment." *Id.* Thus, Mr. McFarland's experience working for a Federal agency dealing with international trade, transportation and transshipment issues overcame plaintiff's claims that he had no "real world" experience in transshipment, *i.e.* commercial experience. *Id.* at 1328-33. In addition, the *Univar* Court explained that "[e]xperts may rely on opinions of other experts on areas outside their expertise[,]" citing to *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283,

3

1303 (Fed. Cir. 2015), and further added that "[i]t is not necessary that the basis for their opinions be obtained from personal perception[,]" citing to *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008).  294 F. Supp. 3d at 1329.

Dr. Parachuru's opinions, based upon his expertise, his experience, and his specialized knowledge, meet the reliability standard considering the nature of what is at issue in the case at bar.  *See Kumho Tire*, 526 U.S. at 150-154.  As we explain below, given the context of this case, Dr. Parachuru's opinions based, among other things, upon his visual and tactile comparison of the Viecura fixation pants samples with commodity underwear like the "boy short" exhibit described below, should be considered by the Court.

## A.  Dr. Parachuru's Expertise And Experience Show That He Is An Expert In Textile Technology And Textile Manufacturing And Design

Plaintiff argues that Dr. Parachuru should not be qualified as a generalized expert in "textile manufacturing" because he "provides no credentials or relevant experience whatsoever specific to researching or evaluating the design features of the garments at issue in this case."  Pl. Mot. at 5.  Plaintiff's claim is unfounded.  Dr. Parachuru's credentials are contained in his expert report[2] and CV, and he possesses three degrees in textile manufacturing which took 12 years to complete.  Specifically, these degrees are as follows: a BS in Textile Technology from The University of Madras, India, (1968-73), an MS in Textile Technology from The University of Madras, India, (1973-75) and a PhD in Textile Engineering from The Indian Institute of

---

[2] Plaintiff has moved to strike Dr. Parachuru's opinion without providing the Court with his report necessary for the Court to evaluate his opinion in light of his expertise.  While failure to provide his report should be fatal to plaintiff's motion, we do not want to delay this process further and provide his report here.  Attached as Exhibit A to defendant's Motion is Dr. Parachuru's report in this matter.

Technology, New Delhi, India, (1976-80).  *See* Pl. Mot. at Exhibit 2 (Dr. Parachuru CV).

Plaintiff's counsel explored these degrees in "textile technology" with Dr. Parachuru:

```
 1    A. Yes. I have three degrees
 2    in textile technology, textile
 3    engineering. The first degree, the
 4    BS degree, is a five-year
 5    professional engineering degree. The
 6    second degree is a two-year master's
 7    degree. And the third degree is a
 8    Ph.D. Degree. All of them in the
 9    field of textile technology, textile
10    engineering.
11    Q. Okay. When you use the
12    term "textile technology," could you
13    explain to us what that means?
14    A. Textile technology deals
15    with the manufacturing processes and
16    manufacturing ~~accoutrement~~ [equipment] used to
17    produce polymers, fibers, yarns,
18    fabrics, garments, carpets and all
19    other miscellaneous fibrous products,
20    including non-woolen materials,
21    industrial textiles, technical
22    textiles. Everything that is made,
23    the technology that represents all --
24    the whole range of fabric based
25    products.
```

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Page 6).[3]

Plaintiff's counsel asked Dr. Parachuru about his work in yarn formation, and he answered:

```
20    You said you have expertise
21    in yarn formation. What does that
22    mean?
23    A. Yeah. Yarn formation,
24    actually, that -- basically, that --
```

---

[3] The version of Dr. Parachuru's deposition included as Exhibit 1 to Pl. Mot. was submitted before Dr. Parachuru submitted his deposition errata.  Attached as Exhibit B to defendant's Motion is Dr. Parachuru's deposition with errata noted.  Cites to Dr. Parachuru's deposition will be to Pl. Mot. at Exhibit 1, however any errata denoted by brackets are found in Def. Exhibit B.

25  there are two different types of

1  yarns. One of them is 100 percent
2  ~~thick~~ [synthetic] yarn, which is continuous
3  length yarn, there is no break. You
4  can make millions of meters long yarn
5  in a continuous length format.
6  That's mostly yarns made from
7  synthetic materials, polymer
8  materials, like polyester, nylon, et
9  cetera. And we have short fiber
10  yarns. Yarns made from short fibers,
11  like cotton fibers.
12  Q. C-o-t-t-o-n.
13  A. Cotton and wool are short
14  fibers. So we make short staple
15  yarns using short fibers like cotton
16  and wool. But the short staple yarn
17  manufacturing process is a more
18  elaborate process that involves
19  multiple steps, about eight or nine
20  different steps in the manufacturing
21  process[. . .]

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 16 and 17).

Plaintiff's counsel also asked Dr. Parachuru about his work and knowledge of weaving, and he

gave the following answer:

13  Q. Okay. Now you also talked
14  about weaving. Can you describe to
15  us what your work regarding weaving
16  including?
17  A. Yes. [Training in] Weaving is very
18  much -- very much -- very much very
19  required training for textile
20  manufacturing -- manufacturing,
21  technology. In weaving we have
22  several technology levels starting
23  from a hand loom to a fully automated
24  air jet or water jet loom, you're
25  making compress air to carry yarn

1  from one place to another place.
2  Okay. That is called air jet, a-i-r,
3  air, j-e-t, air jet. A compress [ed] air
4  jet. So you use the compression jet
5  of air to carry yarn from one place
6  to another place. That is a very
7  fast rapid rate of movement and they
8  use a very high production rate. So
9  I'm talking about the technology
10  levels involved in weaving. There
11  are multiple technology levels in
12  weaving. And so that looms are of
13  five different elevations. At the
14  lowest level starting at the --
15  starting at the hand loom, at the
16  highest level, where we have the what
17  we call is a multiphase -- multiphase
18  weaving machine, where in a
19  multiphase weaving machine, instead
20  of carrying one yarn at a time, there
21  are ~~accoutrement~~ [equipment] that carry, say,
22  5,000 yarns at the same time. So
23  that is the latest high speed weaving
24  technology. So there are different
25  technology levels in weaving, too.

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 18 and 19).

Dr. Parachuru was also asked by Plaintiff's counsel about his knowledge of knitting:

1  Q. Okay. And is it fair to
2  say that weaving is one of the
3  processes used to manufacture a
4  fabric?
5  A. One of the processes, yes,
6  sir.
7  Q. Okay. What about knitting?
8  You explained that you were involved
9  with knitting.
10  A. Yes, sir. Knitting --
11  basically, there are three different
12  types of knitting, knitting machines.
13  ~~Rough~~ [Weft] knitting, which is circular
14  knitting. Warp, w-a-r-p, knitting.

```
15   Warp knits, which produces linear
16   longitudinal fabric, not circular
17   fabric. And then we also have a
18   third technology, which is called a
19   flatbed knit, flat bed, f-l-a-t,
20   b-e-d, flatbed knitting, which has
21   little more potential for designing
22   and variations -- variations in
23   appearance of the fabric and create
24   the flatbed knitting machine.
```

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Page 20).

Dr. Parachuru has extensive academic experience in the textile fields. His experience includes teaching undergraduate classes in yarn formation, weaving, knitting, fiber science, nonwovens, physical testing and quality control for more than 30 years at the Georgia Institute of Technology. *See* Pl. Mot. at Exhibit 2 (Dr. Parachuru CV at 1 of 36). Dr. Parachuru also taught courses which included apparel pattern making and apparel design. *See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 71-73).

Dr. Parachuru also possesses practical experience. During 1982 through 1984 Dr. Parachuru was part of the planning, commissioning and managing of a textile manufacturing plant, *i.e.*, the Telengana Textile Mills, located in Andhrapradesh, India. *See id.* (CV at 3 of 36). Dr. Parachuru completed hundreds of applied research projects for the textile manufacturing industry as the Coordinator of Public Service/Industry Support for Georgia Tech's, School of Polymer & Fiber Engineering. *See id.* (CV at 3 of 36). Dr. Parachuru testified about the Public Service Outreach project, noting that some textile problem solving efforts resulted in more extensive projects while others were resolved through phone consultations.

```
3    [                    ] Actually, I
4    saw, as you can see from my resume, I
5    served as the coordinator of industry
6    support activities at Georgia Tech.
```

7    So some of the design requirements
8    were referred to me by manufacturing
9    companies. This is one of those
10    projects that came through one of the
11    companies.
12    Q. Okay. And would this
13    experience be listed in your
14    curriculum vitae?
15    A. I have not listed all the
16    projects, because they're running
17    into several hundreds.
18    Q. Okay. And --
19    A. Many of them -- in fact,
20    hundreds of them were based on my
21    advice on the telephone telling
22    them -- hearing the problem they
23    described to me on telephone and
24    giving solutions to them on possible
25    ways of solving those problems. And

1    my help ended with half an hour of
2    talk and -- because I was working for
3    the state that was the service I
4    provided. S-e-r-v-i-c-e.
5    Q. Okay. So now, your -- your
6    experience has been working for
7    universities, correct?
8    A. Working for hundreds of
9    companies through universities.

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 80-81).

Dr. Parachuru has designed garments, including under garments, as part of his lab work.

Exhibit 1 (Dr. Parachuru Deposition at Pages 74-75).  While not commercial experience, this is

significant practical experience.  As noted, he has extensive experience in correcting and solving

problems with textile product failure issues.  *See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition

at Pages 73-74, 80-81).  Relevant here and more specifically, Dr. Parachuru has experience with

assisting with the design of a urinary incontinence pants.  *See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 76-79).

The incontinence pants product which Dr. Parachuru, worked on was unlike Viecura's "fixation pants" underpants at issue which have no special features.  Instead, the pants Dr. Parachuru worked on were designed to hold internal urine collection bags through a system of internal pockets sewn into the shorts.  *Id*.  The urine collection bags were incorporated into a catheter system.  *Id*.  The undergarment Dr. Parachuru worked on was designed to hold internal urine bags and a catheter system, features not found in general commodity type underwear, and arguably are specially designed for the use or benefit of the chronically incontinent.

As reflected by Dr. Parachuru's detailed expertise and experience stated in his CV and deposition, he is qualified to give opinions on whether the textile design features exhibited by the Viecura "fixation pant" are similar to those found in commodity underwear or whether they reflect textile design features uniquely for the benefit of the incontinent.  Pl. Mot., Exs. 1 and 2 (Listing undergraduate courses taught, positions held both academically and in industry, awards received, published books and chapters, articles submitted, research reports prepared, professional presentations given, research proposals submitted and funded, and graduate and undergraduate projects overseen).

**B.  Dr. Parachuru's Expert Opinion Regarding Viecura's Fixation Pant Product Is Based On Reliable Methodologies And Experience**

Dr. Parachuru's testimony predominantly involves his experience in the field of textile manufacturing and textile design.  As the *Univar* Court explained, citing to *Kumho Tire*, 526 U.S. at 152, "'[b]ecause it is usually impossible to subject nonscientific theories to experimentation,' the court 'should concentrate on the expert's experience, rather than

methodology.'" 294 F. Supp. 3d at 1328. Dr. Parachuru's experience, alone, qualifies him as an expert.

Nevertheless, even if we look beyond Dr. Parachuru's experience, he also described his methodologies, including the use of observation and tactile handling of fabrics and garments which he testified has formed the basis of comparison of garments for thousands of years. Even today, consumers make garment purchasing decisions based on handling of fabrics between fingers. Visual observation and tactile evaluation are a highly relevant methods of evaluation especially when looking for commonalities and differences between stretch-to-fit commodity underwear and what plaintiff calls a fixation pant product. Moreover, Dr. Parachuru reviewed physical samples of all of plaintiff's products as issue and compared them with samples of general commodity type underwear. This is a highly relevant process as the Federal Circuit has noted "the merchandise itself is often a potent witness in classification cases." *Simod America Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989). When comparing features, what better method can there be than actually observing and touching the actual samples in order to render an opinion informed by extensive experience.

More specifically, as noted in his report (Def. Ex. A), Dr. Parachuru reviewed and considered the following:

> **Documents:**
> Protective order document; two other court documents; declaration document; 6-page complaint document.
> **Depositions:**
> Gallagher Deposition [Viecura 30(b)(6) witness]
> Ashley Juneau Deposition [Bob Barker Co. 30(b)(6) witness]
> [Dr. Parachuru] has reviewed the following Exhibits from the Gallagher Deposition:
> **Samples:**
> Gallagher Dep. Exhibit 3: Undergarment HM Women's underwear
> Gallagher Dep. Exhibit 4: Undergarment HM Women's underwear
> Gallagher Dep. Exhibit 5: TENA Pant Sample Item No. 9182.3

Gallagher Dep. Exhibit 6: TENA Pant Sample Item No. 9182.4
Gallagher Dep. Exhibit 7: TENA Pant Sample Item No. 9182.4.
Gallagher Dep. Exhibit 8: TENA Pant Sample Item No. 9182.6
Gallagher Dep. Exhibit 9: Viecura Pant Sample Item No. 2728.5.
Gallagher Dep. Exhibit 10: Viecura Pant Sample Item No. 9159.5
Gallagher Dep. Exhibit 11: Photo of Box
Gallagher Dep. Exhibit 12: Pant Samples Item No. 2728.6.
Gallagher Dep. Exhibit 13: Attends Pant Sample Item No. 9155.4.
Gallagher Dep. Exhibit 14: Cardinal Health Sample Package Item No. 9159.4
Gallagher Dep. Exhibit 15: Sample Attends Item No. 9155.5
Gallagher Dep. Exhibit 16: Cardinal Health Sample Item No. 9159.2.3
Gallagher Dep. Exhibit 17: Cardinal Health Sample Item No. 9152.4.5
Gallagher Dep. Exhibit 18: Cardinal Health Sample Item No. 9152.8
Gallagher Dep. Exhibit 19: Cardinal Health Pant Item No. 9152.6.7
Gallagher Dep. Exhibit 20: Cardinal Health Pant Item No. 9152.2.3
Gallagher Dep. Exhibit 21: Viecura Sample Pants Item No. 9155.2.3
Gallagher Dep. Exhibit 22: Pant Samples Item No. 9155.6
Gallagher Dep. Exhibit 23: Sample of a Pad Viecura says can be used with pants
Gallagher Dep. Exhibit 30: Sample of Washable Mesh Pants Four-Pack with
a picture of the bag in came in.
Gallagher Dep. Exhibit 32: Sample of Boy Shorts with a picture of Box
[Dr. Parachuru] also received and reviewed three other undergarment samples listed
below:
Disposable Underwear Samples Sold by Bob Barker's Company-
Maternity Knit Pants of Cardinal Health Designated as WINGSTM Pants
Starly Men's Pure Cotton Disposable Boxer Underpants

In sum, Dr. Parachuru has described his methodology, in both his expert report and

testimony, and most importantly, he has demonstrated that he possesses the requisite knowledge

and experience to be qualified as an expert witness in this proceeding.

> 23 Q. Okay. And tell us how you
> 24 came to prepare this report.
> 25 A. By reviewing the samples
> 1 that were supplied to me. And
> 2 through my knowledge of similar
> 3 products, through the knowledge that
> 4 I gained on similar products for
> 5 nearly 35, 40 years.

*See* Pl. Mot. at Exhibit 1 (Dr. Parachuru Deposition at Pages 33-34).

Dr. Parachuru testified that he hand stretched the samples, by stretching them and allowing them to recover, a number of times.  He also looked at the fabric materials comprising the samples' waistband, leg openings, and yarns comprising the garment under a magnifying glass.  *Id*. at Dr. Parachuru Deposition Page 35.

Dr. Parachuru's background in textile manufacturing brings an in-depth understanding of this visual and tactile comparison including a knowledge of the types of fabrics used in the samples, how they were made and their resulting characteristics and uses.

Courts have upheld expert's opinions based upon "visual or tactile inspection" or "skill or experienced-based observation", finding such testimony sufficiently reliable in light of the nature of the issue on which the expert proposes to opine, the relatively narrow scope of the expert's testimony, and the expert's particular field of expertise.  More specifically, the court in *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470 (D.N.J. 2002) stated the following regarding the use of visual or tactile inspection:

> Defendants' primary contention is that Dr. Batterman's testimony should be excluded because he fails to employ a reliable methodology and does not support his conclusions with specific references to peer reviewed articles or studies establishing a link between bicycle seats and erectile dysfunction. The Court rejects both these arguments, however.  As the Court acknowledged in *Kumho*, in some circumstances, an expert opinion based exclusively on a "visual or tactile inspection" or "skill or experienced-based observation" may, depending on "the nature of the issue [in dispute], the expert's particular expertise, and the subject of his testimony," satisfy Rule 702's threshold of evidentiary reliability. [*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)]; *see, e.g., United States v. McPhilomy*, 270 F.3d 1302, 1313 (10th Cir.2001) (holding that Bureau of Land Management employee with an advanced degree in geology and experience in evaluating mineral materials who had "personally inspected" a sample of stone and observed its physical properties could reliably offer expert testimony with respect to the quality of the stone). Under the circumstances, Dr. Batterman's reliance on visual or tactile inspection and his own specialized expertise is sufficiently reliable in light of the nature of the issue on which he proposes to opine, the

relatively narrow scope of his testimony, and his particular field of expertise.

*Id.* at 501.

Here, the comparison of textile features exhibited by Viecura's fixation pants with general commodity stretch-to-fit underwear, presents an issue that is limited in nature, providing a narrow scope for testimony, that is in fact well within Dr. Parachuru's field. Finally, Dr. Parachuru described in detail the documents that he reviewed and upon which he also based his expert opinion, including the complaint and the documents and samples produced by the parties in discovery.[4] Further Dr. Parachuru's methodology upon which he came to his conclusion that the Viecura fixation pants exhibit functionally the same characteristics of general commodity stretch-to-fit underwear like the "boy shorts" (Gallagher Dep. Exhibit 32) is consistent with how Viecura's president and Rule 30(b)(6) witness, Donald Gallagher was able to make a similar comparison.

Viecura's president, Donald Gallagher, acted as Viecura's Rule 30(b)(6) witness during a deposition held on April 9, 2024. Mr. Gallagher, a process engineer having a lot of experience in manufacturing fixation pants, was handed a physical sample of seemless women's underwear, styled as "boy shorts" during his deposition (Marked at the Gallagher deposition as Defendants' Exhibit 32). *See* Def. Ex. C, Gallagher Dep. Page 142, Lines 14-25; Page 143 Lines 2-18. Mr. Gallagher was asked to make a comparison between the fixation pants and Exhibit 32 the boy shorts and to specifically note any differences. *See id*. Gallagher Dep. Page 143, Lines 19-22. It

---

[4] The consolidated complaint reviewed by Dr. Parachuru provides a starting point for any comparison involving Viecura's fixation pants. Viecura sets forth its "special" design features including: 1) a wide waistband with substantial spandex content, 2) elasticized leg openings, 3) elastic body of the garment designed to keep it snug against the wearer's body, 4) seamless side construction, 5) lack of a gusset in its construction, and 6) deeper crotch area. *See* Consolidated Complaint 15-20 (ECF No. 10).

is noteworthy that Mr. Gallagher upon visual and tactile examination of the boy shorts was, in fact, readily able to make a comparison without voicing any arguments against the suitablity of doing so. *See id*. Gallagher Dep. Pages 142-46. Mr. Gallagher noted that the boy short projected a more expensive garment than the fixation pants. *See id*. Gallagher Dep. Page 145, Lines 4-23. Mr. Gallagher noted that the boy shorts and fixation pants are both seamless and have a high waistband. *See id*. Gallagher Dep. Page 143 Lines 24-25; Page 144, Lines 2-5. Mr. Gallagher noted that the boy shorts have a gusset (an extra piece of fabric in the crotch area) while the fixation pants do not. *See id*. Def. Ex. C, Gallagher Dep. Page 144, Lines 10-14. The boy shorts, like the fixation pants, have a stretchiness to their design, *i.e.* a form fitting design. *See id*. Gallagher Dep. Page 146, Lines 9-15. He found the waistband in the boy shorts to be similar to the fixation pants. *See id*. Gallagher Dep. Page 146, Lines 16-20. He found the hem and elasticity of the leg openings as between the boy shorts and the fixation pants to also be similar. *See id*. Gallagher Dep. Page 146, Lines 21-23. Thus Mr. Gallagher admitted that the boy shorts and Viecura's product have a similar seamless construction, stretch-to-fit fabric body, large elastic waistband, and a similar hemed leg opening *See id*. Gallagher Dep. Pages 143-46. In other words, Mr. Gallagher utilizing a similar visual and tactile examination of the "boy shorts" was able to draw a comparison with his fixation pants product.

Plaintiff in its motion brief at page 8 cites the decision in *Cascade Yarns, Inc. v. Knitting Fever, Inc*., No. C10-861 RSM, 2015 WL 11201216 (W.D. Wash. Jan. 30, 2015) (*Cascade Yarns*), a case where Dr. Parachuru had submitted an expert report. Pl. Mot. Brief at page 8. The Court in *Cascade Yarns*, while acknowledging that Dr. Parachuru is an expert in fiber manufacturing and performance, struck his report as it failed to adequately set forth his scientific analysis upon which his conclusion in that case was based. *Cascade Yarns* at *2. The Court in

*Cascade Yarn* refused to consider Dr. Parachuru's declaration included with the brief in opposition to the motion to strike, which set forth some of his research sources supporting his report conclusions as being an untimely Rule 26 disclosure.  Similarly, Plaintiff Viecura's proposed expert in this case, Dr. Chughtai, a urologist, had one of his reports stricken in a case captioned, *Teran v. Coloplast Corp.*, 633 F. Supp. 3d 1103 (N.D. Ill. 2022).  The Court in the *Teran* case stated that Dr. Chughtai's report therein ". . . offers no analysis or discussion of any particular element of plaintiff's complex medical history, nor does it address the role any aspect of that history may have played in her injuries or ongoing symptoms – [which] is a classic example of expert *ipse dixit*."  *Id.* at 1112.

While the *Cascade* and *Teran* cases do not dispute that the experts therein have expertise, the Court in both cases explained that the experts' reports did not adequately set forth the basis for their conclusions in order for the testimony to be useful.  The issues the courts raise with regard to the expert reports in both *Cascade* and *Teran* are not present here.  Here, Dr. Parachuru is opining based upon his experience and specialized knowledge as applied to his review of relevant documents and visual and tactile examination of the samples at issue.  This is evident in the detailed comparisons set forth in Dr. Parachuru's report.  *See* Def. Ex. A.   His analysis is more than sufficient based upon the issues relevant to this case, *i.e.* do the "fixation pants" exhibit specialized features for the chronically incontinent or are the features similar to those found in regular commodity underwear.

Significantly, Dr. Parachuru is considered an expert in textile product manufacture and design by his peers and in his community.  He has demonstrated that he has the expertise to provide testimony regarding the features and design of Viecura's stretch-to-fit "fixation pants"

with general commodity stretch to fit underwear, which will be both reliable and probative to the

Court. *See Univar*, 294 F. Supp. 3d at 1328.

## CONCLUSION

For all the foregoing reasons, Dr. Parachuru's expert report and deposition testimony

demonstrate that he is qualified to testify as an expert witness, and plaintiff's motion to

exclude his expert testimony and expert report should be denied.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230

Dated: March 14, 2025            *Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Edward F. Kenny, a Senior Trial Counsel in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing Defendant's Response in Opposition to Plaintiff's Motion to Exclude the Testimony and Reports of Defendant's Expert Witness Dr. Parachuru, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the  word count limitation under the Court's chambers procedures, and contains 4,880 words.

/s/ Edward F. Kenny
EDWARD F. KENNY
