UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| VIECURA INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Consol. Court No. 21-00154 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## JUDGMENT ORDER

Upon reading defendant's motion for summary judgment, plaintiff's response papers, and the defendant's reply thereto, and upon consideration of other papers and proceedings had herein, it is hereby:

**ORDERED** that defendant's motion for summary judgment be, and hereby is, granted; denying plaintiff's request for duty-free treatment under a secondary classification pursuant to subheading 9817.00.96, HTSUS.

**ORDERED** that this action be, and hereby is, dismissed.

_____
JOSEPH A. LAROSKI, JR., JUDGE

Dated:  New York, New York
          This      day of               , 2025.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| VIECURA INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Consol. Court No. 21-00154 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### **DEFENDANT'S MOTION AND MEMORANDUM**
### **IN SUPPORT OF SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Fariha Binte Kabir, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

STATEMENT OF FACTS ................................................................................ 3

RELEVANT HTSUS PROVISIONS AND NOTES.......................................... 8

QUESTION PRESENTED................................................................................. 9

SUMMARY OF ARGUMENT .......................................................................... 9

ARGUMENT .................................................................................................... 11

I.    SUMMARY JUDGMENT FOR THE GOVERNMENT IS PROPER .......................... 11

II.   THE APPLICABLE LEGAL FRAMEWORK ............................................... 12

III.  THE UNISEX KNIT UNDERPANTS AT ISSUE DO NOT
      QUALIFY FOR SECONDARY CLASSIFICATION UNDER
      SUBHEADING 9817.00.96, HTSUS ............................................. 13

   A. VIECURA'S KNIT UNDERPANTS ARE EXCLUDED FROM SUBHEADING
      9817.00.96 BECAUSE VIECURA PACKAGES AND SELLS THE SAME
      UNDERPANTS AS "MATERNITY KNIT PANTS," FOR AN ACUTE,
      TEMPORARY DISABILITY ............................................................. 14

   B. ANALYSIS PURSUANT TO THE FIVE FACTORS APPROVED BY
      THE FEDERAL CIRCUIT IN THE *SIGVARIS* CASE SHOWS THAT
      THE UNISEX KNIT PANTS ARE NOT SPECIALLY DESIGNED
      FOR THE USE OR BENEFIT OF THE CHRONICALLY
      PHYSICALLY DISABLED ............................................................... 17

      1. Analysis of the Five Customs Factors Adopted by the Federal Circuit
         in *Sigvaris* ......................................................................... 18

         i.   Physical Properties............................................................. 18

         ii.  Whether The Merchandise Is Solely Used by The Handicapped ......... 23

         iii. The Likelihood That the Merchandise is Useful to the General Public.............. 25

         iv.  Whether The Merchandise Is Sold In Specialty Stores ....................... 26

i

v.  The Specific Design Of The Merchandise ........................................... 27

CONCLUSION .......................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Aves. In Leather, Inc. v. United States.*,
423 F.3d 1326 (Fed. Cir. 2005) .......................................................... 12

*Bausch & Lomb, Inc. v. United States*,
148 F.3d 1363 (Fed. Cir. 1998) .......................................................... 11

*Brookside Veneers, Ltd. v. United States*,
847 F.2d 786 (Fed. Cir. 1988) ............................................................ 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................ 11

*Clarendon Marketing, Inc. v. United States*,
144 F.3d 1464 (Fed. Cir. 1998) .......................................................... 11

*Lynteq, Inc. v. United States*,
976 F.2d 693 (Fed. Cir.1992) ............................................................. 12

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................ 11

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998) .......................................................... 12

*Pillowtex Corp. v. United States*,
171 F.3d 1370 (Fed. Cir.1999) ........................................................... 12

*Schlumberger Tech. Corp. v. United States*,
845 F.3d 1158 (Fed. Cir. 2017) .......................................................... 13

*Sigma–Tau HealthSci., Inc. v. United States,*
838 F.3d 1272 (Fed. Cir. 2016) .......................................................... 13

Sigvaris, Inc. v. United States,
227 F.Supp.3d 1327 (Ct. Int'l Trade 2017) ................................................................ 17

Sigvaris, Inc. v. United States,
899 F.3d 1308 (Fed. Cir. 2018) ...................................................................... 17, 23

*United States v. Pan Pac.Textile Group, Inc.,*
276 F.Supp.2d 1316 (Ct. Int'l Trade, 2003) ............................................................ 11


**Harmonized Tariff Schedule of The United States**

General Rules of Interpretation 1 ............................................................................. 12

Chapter 61

US Note 9 .................................................................................................................. 2

Heading 6108

Subheading 6108.22.90 ...................................................................................... 2, 12

Chapter 98

Subchapter XVII

US Note 4(a) .................................................................. 1, 12, 14, 15, 16, 23

US Note 4(b) .......................................................................... 1, 12, 14, 15, 23

US Note 4(b)(i) ........................................................................................ 15, 25

Heading 9817

Subheading 9817.00.96 ...................................................................... *passim*


**Other Statues**


The Educational, Scientific and Cultural Materials Importation Act. of 1982
(*See* Pub. L. No. 97-446, 97 Stat. 2329, 2346 (1983)) .......................................... 18

The Educational, Scientific, and Cultural Materials Importation Act of 1982 and the Omnibus
Trade and Competitiveness Act of 1988 were enacted to implement the Nairobi Protocol.
Pub. L. No. 100-418, 102 Stat. 1107 (the Omnibus Act) (1988) .......................... 13

Section 301 of the Trade Act of 1974 (Pub. L. 93–618, 19 U.S.C. § 2411)
(last amended March 23, 2018) ............................................................................... 2

**Federal Register Notices**

Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related
to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 45821
(August 30, 2019) ................................................................................................... 2

Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related
to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 43304
(August 20, 2019) ................................................................................................... 2

**Rules**

USCIT Rule 30(b)(6) ........................................................................................ 3, 6, 8, 21

USCIT Rule 56 ...................................................................................................... 1, 11

USCIT Rule 56(c) .................................................................................................... 11

**Other Authorities**

S. Rep. (Finance Committee) No. 97-564, 97th Cong. 2nd Sess. (1982) .................................... 18

U.S. Customs Service Implementation of the Duty–Free Provisions of the Nairobi Protocol,
Annex E, to the Florence Agreement, T.D. 92–77,
26 Cust. Bull. & Dec. 240, 246 (1992) .................................................................. 17, 18, 25

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

```
_____
VIECURA INC.,                           :
                                        :
                                        :
                     Plaintiff,         :    Consol. Court No. 21-00154
                                        :
            v.                          :
                                        :
UNITED STATES,                          :
                                        :
                     Defendant.         :
_____:
```

## DEFENDANT'S MOTION AND MEMORANDUM
## IN SUPPORT OF SUMMARY JUDGMENT

Defendant, the United States (the Government), moves for summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade. We respectfully request that this Court sustain U.S. Customs and Border Protection's (Customs or CBP) determination that the unisex knit underpants at issue do not satisfy the requirements for secondary classification under subheading 9817.00.96 of the Harmonized Tariff Schedule of the United States (HTSUS) for duty-free treatment and dismiss this action.

## INTRODUCTION

This action challenges CBP's denial of plaintiff's, Viecura Inc. (Viecura), request for secondary classification of its unisex knit underpants as "incontinence fixation pants," under subheading 9817.00.96, HTSUS, a provision that implements the Nairobi Protocol and provides for duty-free treatment of goods that meet certain conditions. Those conditions consider whether the articles are "specially designed" for "physically or mentally handicapped persons". U.S. Notes 4(a) and (b) to Subchapter XVII, Chapter 98, HTSUS (implementing the Nairobi Protocol). There is no dispute as to the primary classification of the imported unisex knit

underwear of man-made fibers under subheading 6108.22.90, HTSUS, the only issue is whether

the goods are eligible under the secondary classification of subheading 9817.00.96, HTSUS,

which they are not, as discussed below.

## BACKGROUND

Between May 5, 2019, and May 27, 2020, Viecura made 26 entries of unisex knit

underpants pursuant to subheading 6108.22.90, HTSUS which provides for "Women's or girls'

slips, petticoats, briefs, panties, night dresses, pajamas, negligees, bathrobes, dressing gowns and

similar articles, knitted or crocheted: . . . Of man-made fibers: . . . Other."  According to U.S.

Note 9 in Chapter 61, HTSUS, unisex merchandise of this Chapter is classified as women's or

girl's garments.  Under subheading 6108.22.90, HTSUS, certain entries were subject to

additional 15 percent *ad valorem* duties pursuant to Section 301 of the Trade Act of 1974 (Pub.

L. 93–618, 19 U.S.C. § 2411) because they were of Chinese origin and entered on or after

September 1, 2019.[1]  *See* Notice of Modification of Section 301 Action: China's Acts, Policies,

and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed.

Reg. 45821 (August 30, 2019); Notice of Modification of Section 301 Action: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84

Fed. Reg. 43304 (August 20, 2019).

Plaintiff protested the liquidations of the entries in this case on the basis that these goods

are duty-free pursuant to a secondary classification under subheading 9817.00.96, HTSUS, as:

"Articles specially designed or adapted for the use or benefit of the blind or other physically or

mentally handicapped persons; parts and accessories (except parts and accessories of braces and

---

[1] This is a consolidated case, and the 23 entries covered by Court No. 21-00546 were entered after September 1, 2019.  The three entries covered by Court No. 21-00154 were entered before September 1, 2019.

artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles: Other". Customs denied the protests. Thereafter, Viecura commenced this action challenging Customs's denial of the protest.

## STATEMENT OF FACTS

By way of background, Viecura is a "private label" manufacturer, importer and wholesaler of healthcare products. Complaint at ¶ 3. Gov. Ex. 1, Gallagher Dep. at 20, 98; Gov. Ex. 2, Sequiera Dep. at 8 and Gov. Ex. 3, Viecura's Response to the Government's First Set of Interrogatory Requests at Response 12.[2] Viecura imports and distributes unisex knit underpants to three main healthcare clients, *i.e.*, Cardinal Health, Essity and Attindas. *See* Complaint at ¶ 11, Gov. Ex. 2, Sequiera Dep. at 8, 15. Specifically, the fourteen knit stretch-to-fit underpants are identified by Viecura as model numbers 9152.2.3 (Gov. Ex. 4), 9152.4.5 (Gov. Ex. 5), 9152.6.7 (Gov. Ex. 6), 9152.8 (Gov. Ex. 7), 9155.2.3 (Gov. Ex. 8), 9155.4 (Gov. Ex. 9), 9155.5 (Gov. Ex. 10), 9155.6 (Gov. Ex. 11), 9159.2.3 (Gov. Ex. 12), 9159.4 (Gov. Ex. 13), 9159.5 (Gov. Ex. 14), 6421100/9182.3 (Gov. Ex. 15), 6422200/3605500/9182.4 (Gov. Exs. 16 and 17), and, 3606600/9182.6, (Gov. Ex. 18).[3] *See* samples produced by Viecura and submitted as Gov. Physical Exhibits 4-18.

---

[2] Donald Gallagher is the President of Viecura Inc. and has been since its founding in 2009. Gov. Ex. 1, Gallaher Dep. at 19. Mr. Gallagher was designated by Viecura Inc. as one of its U.S. Court of Int'l Trade Rule 30(b)(6) representatives and testified on behalf of Viecura at a deposition on April 9, 2024. John Sequiera is Viecura Inc's Vice President of Sales and Marketing and was also designated as one of Viecua Inc.'s Rule 30(b)(6) representatives who testified at a deposition on April 9, 2024. *See* Gov. Ex. 2, Sequiera Dep. A Rule 30(b)(6) witness offers testimony "on behalf" of a non-human party to the case. Fed. R. Civ. P. 30(b)(6) (Notes of Advisory Committee on Rules – 1970 Amendment).

[3] Defendant asked Viecura to identify each model at issue in this action at Request No. 3 of its First Set of Interrogatory Requests. Viecura responded by referring to its Client Item Number List (Gov. Ex. 19) as well as its Entry Breakdown Spreadsheet (Gov. Ex. 20). *See* Gov. Ex. 3, Viecura's Response to the Government's First Set of Interrogatory Requests at Response 3.

The knit underpants are manufactured in China (PRC).  All are produced using a circular knitting process combined with sewing, hydro-fixing and drying.  Gov. Ex. 1, Gallagher Dep. at 30.  The circular knitting machine is set-up to produce a stretchable tube of fabric with an inch wide elastic at the top end, creating a waistband designed to prevent the underpants from shifting downward.  Gov. Ex. 1, Gallagher Dep. at 33-34.  The center of the bottom end of the fabric tube is sewn together to create the garments' stretchable crotch area and leg holes.  Gov. Ex. 1, Gallagher Dep. at 31 and 45, Gov. Physical Exhibits 4-18.  Hydro-fixing and drying is a process whereby the knit underpants are pre-shrunk.  Gov. Ex. 1, Gallagher Dep. at 31-32.  Additionally, for the designed snug fit, the circular knitting machine is programed to maintain an adequate tension throughout the body of the seamless underpants.  Gov. Ex. 1, Gallagher Dep. at 35, 39, Gov. Physical Exhibits 4-18.  The leg openings are also manufactured with adequate tension to assist with the overall snug, body hugging design of the underpants.  Gov. Ex. 1, Gallagher Dep. at 36, Gov. Physical Exhibits 4-18.  Lastly, Mr. Gallagher asserts that there is no fabric piece

---

While there are fifteen items listed on the Client Item Number List, (Gov. Ex. 19) and it is noted that some of items also list alternate model numbers, Item No. 9182.8, which appears on the Client Item Number List is not included in the Entry Breakdown Spreadsheet (Gov. Ex. 20).  As Item No. 9182.8 is not included in any of the entries in this case, it cannot be at issue.  Additionally, it is noted that there are five models that appear on the Entry Breakdown Spreadsheet (Gov. Ex. 20) but are not on the Client Item Number List (Gov. Ex. 19).  Three of these five models, *i.e.*, Item Nos. 2728.4, 2728.5 and 2728.6 are mesh pants with side seams, not of tubular design and not described by the Complaint at ¶¶ 14 and 18.  Viecura's 30(b)(6) witness Mr. Gallagher confirmed that this "old-style" side seam mesh product was not the design at issue in this lawsuit.  *See* Gov. Ex. 1, Gallagher Dep at 54-57 ("It's not one of the pants that is included in this case, as far as I know.")  Two additional models, *i.e.*, model no. 7654800 and 7654700, appearing in the Entry Breakdown Spreadsheet (Gov. Ex. 20) are of a completely different design called "snap pants" and of completely different material – over 50 percent cotton, and not discussed in the interrogatory responses or Complaint and therefore not at issue.  Plaintiff's counsel conceded by email on June 24, 2025, that model nos. 7654800 and 7654700 are not at issue in this case.

(called a gusset) covering the seam in the crotch area of the garment. Gov. Ex. 1, Gallagher Dep. at 41.

The unisex knit underpants by themselves have no capability to absorb bodily fluids. Gov. Ex. 3, Viecura's Response to the Government's First Set of Interrogatories, at Response 14.

Mr. Gallagher claims that the design of Viecura's unisex knit underpants is derived from an old, patented source no longer valid, and that the underpants are presently not subject to any patented process or design. Gov. Ex. 1, Gallagher Dep. at 105-106. Mr. Gallagher claims that Viecura sells the unisex knit underpants as "fixation underpants" because they have the capability of holding any of a variety of incontinence pads snugly in place against the body. Gov. Ex. 1, Gallagher Dep. at 13 and 73. It is the snug fit of the pants, that provides the fixation, *i.e.* the ability to keep the pad in place against the body. Gov. Ex. 1, Gallagher Dep. at 38 and 56. Mr. Gallagher does not know all the kinds of pads that can be used with the underpants, and he is not involved with pad design. Gov. Ex. 1, Gallagher Dep. at 30 and 38. Mr. Gallagher admits that pad design is outside of his competence, and he is not involved with the types of pads available for women's health and hygiene issues including menstrual pads. Gov. Ex. 1, Gallagher Dep. at 82.

As the samples reflect, the knit underpants at issue, have all the common features of regular stretch-to-fit underpants *i.e.*, underpants designed for non-handicapped individuals. *See* Gov. Physical Exs. 4-18. The Viecura underpants have a waistband, leg openings, and are created with man-made stretchy fibers providing an overall snug fit common to stretch-to-fit underpants. *Id.* One of Viecura's client's, Essity, in its sales brochure describes the Viecura underpants as being "designed like regular underwear to support and hold TENA pads in place."

Gov. Ex. 31, Forsberg Dep. at 37.[4]  Essity's Mr. Forsberg testified that the Viecura underpants "goes on like underwear" and are like boy-short regular underpants.  Gov. Ex. 31, Forsberg Dep. at 38.

For at least one of Viecura's distribution customers, Cardinal Health, Viecura sells the same unisex knit underpants as both "Incontinence Knit Pants" and as "Maternity Knit Pants." *See* Gov. Ex. 21, Viecura's Response to the Government's Second Set of Interrogatories at Response 15.  More specifically, Viecura sells four models of unisex knit underpants to Cardinal Health as either maternity or incontinence products depending on the finished packaging they are inserted into, *i.e.*, Model Nos. 9152.2.3 (704A or M), 9152.4.5 (706A or M), 9152.6.7 (707A or M), and 9152.8(708A or M).  Gov. Ex. 22, Marois Dep. at 14-15.[5]  The packaging identifies the underpants either as: (1) "Incontinence Knit Pants" of the 700 series with the Model No. designation "A"; or (2) "Maternity Knit Pants" of the 700 series with the Model No. designation "M".[6]  *See* Gov. Ex. 22, Marois Dep. at 14-15; Gov. Ex. 21, Viecura's Response to the Second Set of Interrogatories at Response 15.

---

[4] Mr. Anthony Forsberg testified on August 28, 2024, as Essity's designated representative pursuant to USCIT Rule 30(b)(6) and the subpoena issued to Essity.  *See* Gov. Ex. 31, Forsberg Dep.

[5] Ms. Cynthia Marois, is the Global Product Manager for Viecura's largest distributor/client Cardinal Health.  Ms. Marois testified as Cardinal Health's designated representative pursuant to USCIT Rule 30(b)(6) and the subpoena issued to Cardinal Health.  *See* Gov. Ex. 22, Marois Dep.

[6] Viecura did not disclose in its Complaint, or First Set of Interrogatory Responses, or Production, the significant fact that their Incontinence Knit Pants products have the same design as their Maternity Knit Pants products.  In fact, Viecura's president and founder claimed during his deposition that the two products were of a different design.  Gov. Ex. 1, Gallagher Dep. at 132-133.  Only after Viecura's largest client/distributor Cardinal Health's representative testified that Viecura's two products were the same (Gov. Ex. 22, Marois Dep. at 14-15), did Viecura admit, in response to our second set of interrogatories, that the products (Viecura's incontinence knit pants and maternity knit pants) were in fact the same. Gov. Ex. 21, Viecura's Response to the Government's Second Set of Interrogatories at Response 15.

Viecura's Vice President of Sales and Marketing confirmed that Cardinal Health

comprises 60 percent of Viecura's sales, while Essity and Attindas amount to the remaining 40

percent - combined.  Gov. Ex. 2, Sequiera Dep. at 15.  Viecura admitted it does not know

specifics about the end users of the products it sells to its three main healthcare distributor

clients.  Gov. Ex. 1, Gallagher Dep. at 131, 132, 134, 156.  To find out information about the

types and quantities of end uses of the products, we deposed representatives of Viecura's third

party customers Cardinal Health, Attindas and Essity regarding their market segments for

Viecura's underpants.

Cardinal Health's Ms. Marois testified that sales to acute care hospital facilities equal

approximately 43 percent of Cardinal Health's total sales of Viecura's unisex knit underpants.

Gov. Ex. 22, Marois Dep. at 17-18.  Cardinal Health's sales to the acute care hospital market is

comprised mostly of maternity care, where the Maternity Knit Pants are combined with

maternity pads or peri-pads to provide comfort to new mothers and help manage normal after-

birth discharge and blood.  Gov. Ex. 22, Marois Dep. at 17-23. Cardinal Health also sells

Viecura's unisex knit underpants to acute care hospitals for post-surgical applications such as

holding a bandage in place over an abdominal surgical wound.  Gov. Ex. 22, Marois Dep. at 24.

Thereafter, Cardinal Health sells approximately 56 percent of the underpants to their distribution

group where their end use is unknown.  Gov. Ex. 22, Marois Dep. at 17-18.  The remaining

approximate 1 percent of Cardinal Health's sales of the underpants are to long-term care

facilities.  Gov. Ex. 22, Marois Dep. at 17-18.

Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners, another of

Viecura's customers, testified that up to 90 percent of Attindas' sales of Viecura unisex knit

underpants are to the acute care hospital market for post-partum maternity care.  Gov. Ex. 23, Dietrich Dep. at 8-11[7]

Viecura's unisex knit underpants can be used in combination with an appropriate pad to assist in the management of both temporary incontinence and chronic incontinence conditions. Gov. Ex. 24, Chughtai Dep. at 82.[8]

Based on the testimony and evidence, the largest segment of Viecura's clients' trackable sales and use are for acute or temporary disabilities, *i.e.*, post-partum care, post-surgical care, or temporary incontinence.

## RELEVANT HTSUS PROVISIONS AND NOTES

CHAPTER 98, SUBCHAPTER XVII
OTHER SPECIAL PROVISION

XXII

U.S. Notes

\* \* \*

4. (a)  For purposes of subheadings 9817.00.92, 9817.00.94 and 9817.00.96, the term "<u>blind or other physically or mentally handicapped persons</u>" includes any person suffering from a permanent or chronic physical or mental impairment which substantially limits one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working.

(b)  Subheadings 9817.00.92, 9817.00.94 and 9817.00.96 do not cover--

(i)  articles for acute or transient disability;

(ii)  spectacles, dentures, and cosmetic articles for individuals not substantially disabled;

(iii)  therapeutic and diagnostic articles; or

(iv)  medicine or drugs.

---

[7] Mr. Jeffrey Dietrich testified on July 10, 2024, as Attindas's designated representative pursuant to USCIT Rule 30(b)(6) and the subpoena issued to Attindas.  *See* Gov. Ex. 23, Dietrich Dep.

[8] Dr. Bilal Chughtai, M.D. is Viecura's disclosed expert who was asked by plaintiff to provide a report on urinary incontinence as a chronic condition.  He was deposed and gave testimony in this case on January 28, 2025, pursuant to subpoena.  Gov. Ex. 24, Chughtai Dep.

* * *

9817.00.96    Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles:

* * *

Other .......................................................................................... Free

## QUESTION PRESENTED

Whether the unisex knit underpants at issue are specially designed for the use or benefit of physically handicapped persons and classifiable under subheading 9817.00.96, HTSUS.

## SUMMARY OF ARGUMENT

Viecura cannot establish secondary classification under subheading 9817.00.96, HTSUS for duty-free treatment as its underpants are not specially designed for the use or benefit of the chronically handicapped. Physically handicapped persons is defined by the tariff statute as persons who suffer from a permanent or chronic physical impairment and not an acute or transient disability. The knit underpants do not meet the criteria as articles for physically handicapped persons because the evidence shows that they are most often used post-partum or for temporary acute care in hospitals.

Viecura asserts that the features common to its underpants models, include a one-inch elastic waistband, a seamless stretch-to-fit pant body, a deep crotch provided by the stretch-to-fit fabric, and hemmed leg openings. Although Viecura claims these features comprise a "special design" for the use and benefit the chronically disabled, providing for classification under subheading 9817.00.96, HTSUS, they do not. These features are not special as the same features are found on regular commodity stretch-to-fit underpants sold in the United States. *See, e.g.*, Gov. Ex. 1, Gallagher Dep. at 143-146 (Discussion of comparison with commodity "Boy Shorts"

9

women's stretch-to-fit underpants (Gov. Physical Ex. 26)). Significantly, as imported, without any pads of any kind, Viecura's underpants are not waterproof or absorbent and cannot alleviate uncontrolled urine releases for any incontinence sufferers.

Viecura's underpants are stretch-to-fit underpants that can be worn by themselves or combined by the wearer with any type of pad the user requires to alleviate any number of issues including maternity post-partum pads, maternity peri-pads, and pads for light or heavy incontinence. Third-party customer distributors of Viecura's goods confirm that Viecura's underpants are used for acute conditions in the hospital, *i.e.* maternity use, as well as to hold abdominal bandages in place for post-surgical patients, or for those who are functionally incontinent because of other temporary medical conditions, *e.g.*, those recovering from hip surgery. While a segment of the products at issue are marketed, in part, toward the "incontinent," such incontinence users could be either temporarily incontinent or chronically incontinent. Gov. Ex. 24, Chughtai Dep. at 82. Overall, the facts discovered during this litigation confirm that these underpants are beneficial for an assortment of people including those with acute, *i.e.*, temporary conditions, as well as chronic conditions, as well as those with no conditions.

The knit underpants at issue here have not been designed with any modification or adaptation so significant as to clearly render the articles for the use or benefit of the chronically physically handicapped. Accordingly, Viecura's claimed classification under subheading 9817.00.96, HTSUS must be rejected.

## ARGUMENT

I.     **SUMMARY JUDGMENT FOR THE GOVERNMENT IS PROPER**

Under the Rules of the United States Court of International Trade, Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of fact exists, the court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l Trade, 2003); *See also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

 This Court may resolve a classification issue by means of summary judgment.  *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998).  Summary judgment is appropriate where the nature of the merchandise is not in question and the sole issue before the court is the proper classification of the merchandise.  *Bausch & Lomb*, 148 F.3d at 1365 ("summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is.") (Citation omitted).  Thus, in the absence of genuine factual issues, the propriety of summary judgment turns on the proper construction of the HTSUS, which is a question of law.  *Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998).

As is evident from a review of the Government's well supported USCIT Rule 56.3 submissions, there are no material facts in dispute regarding the imported unisex knit underpants, and this case can be decided on summary judgment.

## II.    THE APPLICABLE LEGAL FRAMEWORK

The classification of imported merchandise is governed by the General Rules of Interpretation (GRI), which are applied in numerical order. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). If the proper classification is achieved through a particular GRI, the remaining successive GRI's should not be considered. *Id.* at 1440. GRI 1, provides as follows:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions: . . .

Thus, the first step in analyzing a classification issue is to examine the terms of the relative headings, section notes, and chapter notes. *Pillowtex v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted). Absent contrary legislative intent, tariff terms are to be construed according to their common and ordinary meaning. *Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992). "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information." *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988).

Here, the classification of the unisex knit underpants may be determined by the terms of the tariff provision and, in the case of the Nairobi protocol, U.S. Notes 4(a) and (b) to Subchapter XVII, Chapter 98, HTSUS.

**III.    THE UNISEX KNIT UNDERPANTS AT ISSUE DO NOT QUALIFY FOR SECONDARY CLASSIFICATION UNDER SUBHEADING 9817.00.96, HTSUS**

Viecura seeks an exemption from the duties assessed under subheading 6108.22.90, HTSUS by asserting that its unisex knit underpants also fall within subheading 9817.00.96, HTSUS, encompassing the Nairobi Protocol.  The Educational, Scientific, and Cultural Materials Importation Act of 1982 and the Omnibus Trade and Competitiveness Act of 1988 were enacted to implement the Nairobi Protocol.  Pub. L. No. 100-418, 102 Stat. 1107 (the Omnibus Act) (1988) at Section 1121.  This legislation eliminated duties on, among other things, products covered by subheading 9817.00.96, HTSUS, which provides for the following:

> 9817.00.96    Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles:
>
> * * *
>
> Other. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Free

In accordance with GRI 1, HTSUS, an analysis under this provision requires ascertaining the proper meaning and scope of the terms of subheading 9817.00.96, HTSUS.  *See Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (citing *Sigma–Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276).  As the plain language of this provision indicates, classification under this provision is governed by whether the merchandise is "specially designed or adapted for the use or benefit of the blind or other mentally or physically handicapped persons" and Viecura's knit underpants do not meet the terms as defined.

A. VIECURA'S KNIT UNDERPANTS ARE EXCLUDED FROM SUBHEADING 9817.00.96 BECAUSE VIECURA PACKAGES AND SELLS THE SAME UNDERPANTS AS "MATERNITY KNIT PANTS," FOR AN ACUTE, TEMPORARY DISABILITY

The U.S. Notes to Subchapter XVII, Chapter 98 provide the meaning of "physically handicapped persons."  U.S. Note 4(a) states:

> 4. (a)   For purposes of subheadings 9817.00.92, 9817.00.94 and 9817.00.96, the term "blind or other physically or mentally handicapped persons" includes any person suffering from a permanent or chronic physical or mental impairment which substantially limits one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working.

U.S. Note 4(a), Subchapter XVII, Chapter 98, HTSUS.  Accordingly, physically handicapped persons encompass those with a permanent or chronic physical impairment that substantially limits one or more major life activities.  Those major life activities are illustrated by the exemplars which include caring for oneself, walking, seeing, hearing, speaking, breathing, learning, or working, such that the condition must substantially interfere with a person's ability to perform essential daily tasks.  *Id.*

Relevant here, U.S. Note 4(b) Subchapter XVII, Chapter 98, HTSUS, also provides the exclusion from subheading 9817.00.96 of the following:

> (b)   Subheadings 9817.00.92, 9817.00.94 and 9817.00.96 do not cover--
>
> (i)     articles for acute or transient disability;
> (ii)    spectacles, dentures, and cosmetic articles for individuals not substantially disabled;
> (iii)   therapeutic and diagnostic articles; or
> (iv)    medicine or drugs.

U.S. Note 4(b), Subchapter XVII, Chapter 98, HTSUS.  Therefore, items that are used, for example, for "transient disability", "individuals not substantially disabled", or "therapeutic articles" are not covered.  Consideration of the definition of "physically or mentally handicapped

14

persons" in subchapter note 4(a) together with the exclusions in subchapter note 4(b) provide further guidance as to the limits of a physical handicap for purposes of this subheading.

Viecura's knit underpants design here is the exact same as the knit maternity underwear product used for acute or transient conditions. Because Viecura's knit underpants design is used for a purpose which is excluded pursuant U.S. Note 4(b)(i), Subchapter XVIII, Chapter 98 HTSUS that same design used for the knit underpants at issue cannot be covered by subheading 9817.00.96, HTSUS. Viecura supplies the underpants in final packaging for its client Cardinal Health for four of the unisex knit underpants models, *i.e.*, Model Nos. 9152.2.3 (704A or M), 9152.4.5 (706A or M), 9152.6.7 (707A or M), and 9152.8 (708A or M). The finished packaging identifies the underpants either as "Incontinence Knit Pants" with the 700 series Model No. designation "A" or "Maternity Knit Pants" with the 700 series Model No. designation "M" depending on how Cardinal Health requests the final packaging. The underpants, however, are the same regardless of the designation of the packaging. And the evidence shows the underpants are used mostly for acute hospital and maternity care.

Ms. Cynthia Marois, Global Product Manager for Cardinal Health testified that Cardinal Health sells the Viecura underpants to, among other buyers, hospitals. Gov. Ex. 22, Marois Dep. at 17. She described the acute care hospital market as comprised of mostly maternity care users, where the Viecura underpants combined with Cardinal Health's maternity pads would be used for normal after-birth discharge and blood. Gov. Ex. 22, Marois Dep. at 18-23. Viecura also provided materials from Cardinal Health recommending the use of the Maternity Knit Pants with maternity pads and peri-pads for the recovering moms. *See* Gov. Ex. 21, Viecura's Response to the Government's Second Set of Interrogatories at Response 15 and the document referenced at

15

https://www.cardinalhealth.com/en/product-solutions/medical/woman-and-baby/mom-and-baby-care/mom-care/wings-maternity-knit-pants.html.

Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners, another of Viecura's customers, testified that the overwhelming majority of the Viecura underpants Attindas purchases is sold to hospitals. Gov. Ex. 23, Dietrich Dep. at 8-9. Mr. Dietrich testified that sales to hospitals are primarily used in the post-partum environment. Gov. Ex. 23, Dietrich Dep. at 9. The Attindas sales brochure for Viecura's underpants includes the copy "[g]reat option for OB/GYN care to hold pads in place." Gov. Ex. 23, Dietrich Dep. at 17.

Viecura's expert Dr. Chughtai also testified that maternity pads and peri-pads can be utilized in the post-partum setting to deal with incontinence and vaginal discharge. Gov. Ex. 24, Chughtai Dep. at 56. He testified that the perineal cold packs are used to provide the mother with relief in the post-partum period. Gov. Ex. 24, Chughtai Dep. at 57. Dr. Chughtai agrees that typically post-partum issues are temporary acute issues. *Id*.

It is evident that Viecura's sells its knit underpants as a maternity product, and the condition of maternity is the quintessential temporary disability and not a permanent or chronic impairment. U.S. Notes 4(a), (b)(i) to Subchapter XVII, Chapter 98, HTSUS. As discussed above, Viecura's 700 Series Knit Pants are maternity knit pants for an acute condition. Viecura also asserts that the design features of all the models at issue are the same, *i.e.*, an elastic waistband, a seamless stretch-to-fit pant body, a deep crotch, and hemmed leg openings. *See* Complaint at ¶¶ 15-18. These are the same features as in the four "dual purpose" Cardinal Health models of knit underpants noted above. Because all the models of knit pants have equivalent features to those models Viecura also designates as maternity knit pants, all of Viecura's knit underpants are excluded from subheading 9817.00.96, HTSUS, as they are not

16

specially designed articles for the physically handicapped, *i.e.*, persons suffering from a permanent or chronic physical impairment.

B.   ANALYSIS PURSUANT TO THE FIVE FACTORS APPROVED BY THE FEDERAL CIRCUIT IN THE *SIGVARIS* CASE SHOWS THAT THE UNISEX KNIT PANTS ARE NOT SPECIALLY DESIGNED FOR THE USE OR BENEFIT OF THE CHRONICALLY PHYSICALLY DISABLED

In addition to not being for the use of physically handicapped persons, Viecura's knit underpants are not "specially designed" as required by subheading 9817.00.96, HTSUS.  The Federal Circuit Court of Appeals previously considered the term "specially designed" for Nairobi Protocol treatment in *Sigvaris, Inc., v. United States,* 227 F. Supp.3d 1327 (Ct. Int'l Trade 2017), *aff'd*, 899 F.3d 1308 (Fed. Cir. 2018), which is instructive here.  In *Sigvaris*, the Federal Circuit held that the following analysis provides the methodology to compete the understanding of the operative wording "specially designed":

> We conclude that, to be "specially designed," the subject merchandise must be intended for the use or benefit of a specific class of persons to an extent greater than for the use or benefit of others. This definition of "specially designed" is consistent with factors that Customs uses in discerning for whose use and benefit a product is "specially designed." Customs considers "the physical properties of the merchandise, whether the merchandise is solely used by the handicapped, the specific design of the merchandise, the likelihood the merchandise is useful to the general public, and whether the merchandise is sold in specialty stores." [*Sigvaris*, 227 F.Supp.3d] at 1337 (citing Customs Implementation, 2[6[9]] Cust. Bull. & Dec. at 242–45). These factors aid in assessing whether the subject merchandise is intended for the use or benefit of a specific class of persons to a greater extent than for the use or benefit of others. Accordingly, we adopt them in our analysis.

*Id*. at 1314-15.

---

[9] The Federal Circuit in the body of its opinion cites to the "Customs Implementation" as "28 Cust. Bull. & Dec. at 242-45", however, the correct cite is 26 Cust. Bull. & Dec. at 242-45.  *See also Sigvaris, Inc., v. United States*, 899 F.3d 1308 at FN 1.  We include the "Customs Implementation" 26 Cust. Bull. & Dec. 240 at Gov. Ex. 25

The Federal Circuit's interpretation employed in *Sigvaris* comports with the Senate Report on the legislation leading to the Educational, Scientific and Cultural Materials Importation Act. of 1982 (*See* Pub. L. No. 97-446, 97 Stat. 2329, 2346 (1983)), which noted that the goal of the law was to benefit the handicapped, and expressed concern that people would misuse the provision to avoid paying duties on expensive products.  S. Rep. (Finance Committee) No. 97-564, 97th Cong. 2nd Sess. (1982).  As a result, the Senate Report stated that it did not intend "that an insignificant adaptation would result in duty free treatment for an entire relatively expensive article . . . the modification or adaptation must be significant so as to clearly render the article for use by handicapped persons."  *Id*.

To assist in determining whether a particular product is "specially designed or adapted" for handicapped persons, we address each of the five factors used by Customs and adopted by the Federal Circuit in *Sigvaris* which are: 1) the physical properties of the merchandise, 2) whether the merchandise is solely used by the handicapped, 3) the specific design of the merchandise, 4) the likelihood that the merchandise is useful to the general public, and 5) whether the merchandise is sold in specialty stores.  Gov. Ex. 25, U.S. Customs Service Implementation of the Duty–Free Provisions of the Nairobi Protocol, Annex E, to the Florence Agreement, T.D. 92–77, 26 Cust. Bull. & Dec. 240, 246 (1992).

1) <u>Analysis of the Five Customs Factors Adopted by the Federal Circuit in *Sigvaris*</u>

    i.    <u>Physical Properties</u>

One of the primary factors in determining whether an imported good is "specially designed or adopted for the use or benefit of the handicapped is that the design, modification, or adaptation of the article must be so significant so as to clearly render the article for use by handicapped individuals."  Def. Ex. 25, 26 Cust. Bull. & Dec. at 242.  Specifically, the physical

properties of certain articles conclusively show that they are specially designed for the handicapped, such as a pacemaker or a hearing aid. *Id*. at 243. The physical properties of Viecura's unisex knit underpants to consider are:

- The goods at issue are "unisex knit underpants comprised between 90% and 96% by weight of polyester, with the remainder spandex or elastane yarns." *See* Complaint at ¶ 11.

- The underpants are produced in China (PRC) using a circular knitting process combined with sewing, hydro-fixing and drying. Gov. Ex. 1, Gallagher Dep. at 30.

- The sewing portion of the process creates the underpants' deeper crotch area by joining the middle portion of one end of the elastic knit fabric tube and sewing it together. Gov. Ex. 1, Gallagher Dep. at 31 and 45.

- Hydro-fixing and drying is a process whereby the knit underpants are pre-shrunk. Gov. Ex. 1, Gallagher Dep. at 31-32.

- The circular knitting machine is set up to create a thick waistband, more than an inch wide, with lots of elastic to prevent the body of the underpants from shifting downward. Gov. Ex. 1, Gallagher Dep. at 33-34.

- To maintain the designed snug fit, the circular knitting machine produces seamless underpants and is programed to maintain an adequate tension throughout the body of the underpants. Gov. Ex. 1, Gallagher Dep. at 35, 39.

- The underpants' leg openings are manufactured with an adequate but not uncomfortable tension to assist the overall snug, body hugging design of the pant. Gov. Ex. 1, Gallagher Dep. at 36.

- The unisex stretch-to-fit underpants are produced without a gusset in the crotch, *i.e.*, without a fabric piece (called a gusset) covering the seam in the crotch area of the underpants.  Gov. Ex. 1, Gallagher Dep. at 41.

- The unisex knit underpants alone have no capability to absorb bodily fluids.  Gov. Ex. 3, Viecura's Response 14 to the Government's First Set of Interrogatory Requests.

- Mr. Gallagher claims that Viecura sells the unisex knit underpants as "fixation underpants" because they have the capability of holding any of a variety of incontinence pads snugly in place against the body.  Gov. Ex. 1, Gallagher Dep. at 13 and 73.  It is the snug fit of the pants, that provides the fixation, *i.e.* the ability to keep a pad in place against the body.  Gov. Ex. 1, Gallagher Dep. at 38 and 56.

As the samples reflect, the knit underpants at issue, have all the common features of regular stretch-to-fit underpants *i.e.*, underpants designed for non-handicapped individuals.  *See* Gov. Physical Exs. 4-18.  The Viecura underpants have a waistband, leg openings, and are created with man-made stretchy fibers providing an overall snug fit common to stretch-to-fit underpants.  *Id.*  The user can put on the underpants in the normal fashion – one leg at a time – by utilizing the leg openings and pulling them up onto the body.  While the underpants at issue may be of a more frugal variety, the features are the same as regular commodity stretch-to-fit underpants.  Gov. Physical Ex. 26 Women's Boy Shorts.

The lack of any clearly distinguishing physical features between Viecura's underpants and "regular" *i.e.*, designed for non-handicapped, underpants, can be better understood by discussing some examples of stretch-to-fit underpants that are not designed for the handicapped.

Through third-party discovery, we acquired underpants identified as "unisex disposable briefs" sold by the Bob Barker company and used in prison settings.  *See* Gov. Physical Ex. 27,

Bob Barker sample disposable brief and Gov. Ex. 28, Juneau Dep. at 7-11.[10]  The Bob Barker

company is in the business of selling goods to correctional facilities.  Gov. Ex. 28, Juneau Dep.

at 6-9.  The Bob Barker unisex briefs are marketed toward county jails for use by "short stay" (3

to 5 day) inmates as the undergarment portion of their jail facility uniform.  Gov. Ex. 28, Juneau

Dep. at 9-10.  The unisex disposable briefs are stretch nylon and are one size fits all.  Gov. Ex.

28, Juneau Dep. at 10.  They have a colored waistband, a stretch-to-fit body, a seam in the crotch

area and defined elasticized leg holes.  Gov. Ex. 28, Juneau Dep. at 10-12.  The Bob Barker

unisex disposable briefs have a gusset-less crotch, *i.e.* they are made without a piece of fabric

covering the seam connecting the middle crotch area of the pants.[11]  Gov. Ex. 28, Juneau Dep. at

12-13.  The Bob Barker unisex disposable briefs have a similar frugal quality to them consistent

with the quality of the Viecura underpants.  *See* Gov. Physical Ex. 27, Bob Barker sample.  As

noted, they are marketed to be worn by the general inmate population as underwear.  Gov. Ex.

28, Juneau Dep. at 9-10.

> Viecura also admitted to commonalities between regular seamless underwear and the knit

underpants at issue here.  We acquired a box of regular underpants, identified as women's

seamless stretch-to-fit boy shorts from the on-line marketplace Amazon.  Gov. Physical Ex. 26

Women's Boy Shorts.  The markings on the boy shorts note that they are 90 percent nylon and

10 percent spandex.  *Id*.  Viecura's Mr. Gallagher was shown the boy shorts at his deposition and

was asked to give a comparison of the features of the stretch-to-fit boy shorts in comparison to

---

[10] Ms. Ashlee Juneau, Product Manager for Bob Barker Co. testified on October 28, 2024, as
Bob Barker Co.'s designated representative pursuant to USCIT Rule 30(b)(6) and the subpoena
issued to Bob Barker Co.  *See* Gov. Ex. 28, Juneau Dep.

[11] None of Bob Barker's clients have complained about the gusset-less design.  Gov. Ex. 28,
Juneau Dep. at 13.

the Viecura underpants.  Gov. Ex. 1, Gallagher Dep. at 143.  Mr. Gallagher confirmed that the

boy shorts had a similar stretchiness to Viecura's underpants.  Gov. Ex. 1, Gallagher Dep. at 146.

He noted that the waistband and hemmed leg openings were similar.  Gov. Ex. 1, Gallagher Dep.

at 146.  The boy shorts were seamless like the Viecura underpants and made on the same type of

tubular fabric machine.  Gov. Ex. 1, Gallagher Dep. at 143-144.  Mr. Gallagher found the major

difference between the boy shorts and the Viecura underpants was primarily that the boy shorts

were of a more expensive composition, and that the boy shorts had a gusset in the crotch area,

*i.e*, incorporating an additional layer of fabric in the crotch area. Gov. Ex. 1, Gallagher Dep. at

144-145.

Moreover, Viecura's expert, Dr. Chughtai, is a urologist, and in the course of his

examinations of patients, sees what his patients are wearing to manage incontinence.  Gov. Ex.

24, Chughtai Dep. at 7, 39-40.  He noted that with incontinence pads what is important is that the

underpants used with them have an adequate stretch-to-fit design to hold the pad against the

body.  Gov. Ex. 24, Chughtai Dep. at 38.  Dr. Chughtai testified that some regular stretch-to fit

underpants could be suitable for use with incontinence pads.  Gov. Ex. 24, Chughtai Dep. at 54-

55, 59-61.

Nothing involving the physical properties of Viecura's unisex knit underpants easily and

clearly distinguishes them from regular stretch-to-fit underpants.  As noted, the Viecura

underpants are not absorbent/leakproof themselves and the most important feature is their

stretchiness as it gives the pants the ability to snuggly hold the pads to the body.  As our above

discussion shows, stretchiness is a common physical feature with regular stretch-to-fit

underpants and non-handicapped people also use regular stretch-to-fit underpants to successfully

hold various types of pads, *i.e.* maternity pads, menstrual pads, etc.

ii.    <u>Whether The Merchandise Is Solely Used by The Handicapped</u>[12]

To discuss whether the merchandise is solely used by the handicapped, we rely on U.S.

Notes 4(a) and 4(b) to Subchapter XVII, Chapter 98, HTSUS, discussed above.  To reiterate,

"physically or mentally handicapped person" covers "any person suffering from a permanent or

chronic physical or mental impairment" and not an "acute or transient disability".  Given the

statutory definitions and exclusions, the issue is whether Viecura's underpants are solely used by

the handicapped who are chronically disabled.

Through testimony of third-party customer distributors of Viecura's goods we know that

the chronically incontinent are but one segment of the users of Viecura's underpants.  Viecura

underpants are often used for acute (transient) conditions in the hospital, *i.e.* maternity use, as

well as to hold abdominal bandages in place, and for those who are functionally incontinent

because of other temporary medical conditions, *e.g.*, those recovering from hip surgery.

Additionally, while certainly Viecura's underpants are marketed, in part, toward the

"incontinent," it is indistinguishable whether those end users/buyers will be the chronically

incontinent or the temporarily incontinent.  Gov. Ex. 24, Chughtai Dep. at 82.

Specifically, representatives of Viecura's three customers/distributors, Cardinal Health,

Essity and Attindas provided testimony on Viecura's underpants.  Viecura's VP of Sales and

Marketing confirmed that Cardinal Health comprises 60 percent of Viecura's sales, while Essity

and Attindas combined amount to the remaining 40 percent.  Gov. Ex. 2, Sequiera Dep. at 15.

---

[12] The Federal Circuit in *Sigvaris*, found that the wording "specially designed" in Heading 9817 HTSUS means "the merchandise must be intended for the use or benefit of a specific class of persons to an extent greater than for the use or benefit of others."  *Sigvaris* at 1314-15. However, the Federal Circuit, also found that in assessing whether the subject merchandise is for the use or benefit of a specific class of persons to a greater extent than for the use or benefit of others – Customs five factor analysis is of assistance including the factor "whether the merchandise is solely used by the handicapped."  *Id*.

As we discussed in Point III(A) above, Ms. Cynthia Marois of Cardinal Health testified that Cardinal Health sells the Viecura underpants to hospitals, long-term care facilities and the home healthcare market. Marois Dep. at 17. She described the hospital market as being the acute care market comprised mostly of maternity care users, where the Viecura underpants and maternity pads would be used to manage normal after-birth discharge and blood. Gov. Ex. 22, Marois Dep. at 17-23. Ms. Marois also testified that Viecura's underpants are used for post-surgical applications to hold a bandage in place over an abdominal surgical wound. Marois Dep. at 24. Cardinal Health's catalog lists Viecura's stretch knit underpants and stretch mesh underpants with the advertising copy which reads "[u]se alone or to secure liners, pads or wound dressing in place." Gov. Ex. 29, Cardinal Health Catalog. Ms. Marois testified that sales to acute care facilities equals 43 percent of Cardinal Health's total sales of Viecura unisex knit underpants. Thereafter, Cardinal Health sells approximately 56 percent of the underpants to their distribution group where their end use is unknown. Gov. Ex. 22, Marois Dep. at 17-18. The remaining approximate 1 percent of sales of the underpants are to long-term care facilities. Gov. Ex. 22, Marois Dep. at 17-18. *See* Gov. Ex. 30 declaration of Ms. Marois dated June 16, 2025.

Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners testified that the overwhelming majority of the Viecura underpants Attindas buys are sold to hospitals. Gov. Ex. 23, Dietrich Dep. at 8-9. In fact, 90 percent of Attindas's sales of Viecura knit underpants go to hospitals. Gov. Ex. 23, Dietrich Dep. at 8-9. Mr. Dietrich testified that sales of the underpants to hospitals are primarily used for managing post-partum issues. Gov. Ex. 23, Dietrich Dep. at 9. The Attindas sales brochure for Viecura's underpants includes the copy "[g]reat option for OB/GYN care to hold pads in place." Gov. Ex. 23, Dietrich Dep. at 17.

Mr. Anthony Forsberg, National Clinical Director for Essity's TENA brand testified with regard to Essity's sales of Viecura underpants. Gov. Ex. 32, Forsberg Dep. at 8, 9.  He described that TENA's underpants sales markets included home delivery, the hospital market including post-partum care, the nursing home segment, medical device shops, mixed channels and pharmacy.  Gov. Ex. 31, Forsberg Dep. at 29-31.  In Essity's sales brochure they describe the Viecura underpants as being "designed like regular underwear to support and hold TENA pads in place."  Gov. Ex. 31, Forsberg Dep. at 37.  Mr. Forsberg testified that the Viecura underpants "goes on like underwear" and are similar to boy-short regular underpants.  Gov. Ex. 31, Forsberg Dep. at 38.

It is apparent from the testimony that Viecura cannot establish that the unisex knit underpants at issue are designed or intended to be used primarily, let alone solely, by the chronically physically handicapped, which in this case would be the chronically incontinent. Instead, the testimony of Cardinal Health and Attindas shows that, the verifiable use of Viecura's unisex knit underpants was predominantly for acute care, particularly maternity care, and therefore excluded from duty-free treatment under the Nairobi Protocol pursuant to U.S. Note 4(b)(i) to Subchapter XVII, Chapter 98 HTSUS.

    iii.    <u>The Likelihood That the Merchandise is Useful to the General Public</u>

This factor involves whether any characteristics of the article in question create a substantial probability of use by the chronically handicapped; conversely whether use of the article by the general public is so improbable that such use would be fugitive.  Gov. Ex. 25, 26 Cust. Bull. & Dec. at 243.  In other words, are there any features of the Viecura underpants that would make their use by anyone other than the chronically incontinent improbable.

As we discussed in Point III(B)(1)(i) the features of the Viecura underpants are similar to general commodity stretch-to-fit "boy shorts."[13]  And as we discussed in Point III(B)(1)(ii) they are "designed like regular underwear", "go on like regular underwear" and are similar to "boy shorts" stretch-to-fit underpants.  Gov. Ex. 31, Forsberg Dep. at 37, 38.  In fact, brochures for the sale of the underpants by Cardinal Health, Viecura's largest distributor of plaintiff's unisex knit underpants says the underpants can be used alone or with pads.  Gov. Ex. 22, Marois Dep. at 22.  Further, as we discussed in Point III(B)(1)(i) the Viecura unisex knit underpants are very similar in construction and quality to the Bob Barker disposable knit underpants distributed as uniform underpants in jail institutions.  As Viecura unisex knit underpants have the same features of regular stretch-to-fit underpants and they are advertised by Viecura's largest distributor as "to be used alone" – it is likely and not improbable that Viecura unisex knit underpants are useful to the general public.

      iv.     <u>Whether The Merchandise Is Sold In Specialty Stores</u>

Viecura sells its products to three major distributors in the healthcare field, *i.e.* Cardinal Health, Essity, and Attindas.  Gov. Ex. 2, Sequiera Dep. at 15.  Mr. Sequiera of Viecura describes the manner of sale as business to business.  Gov. Ex. 2, Sequiera Dep. at 7.  Thereafter those three entities distribute the goods to acute care hospitals, distributors, long-term nursing homes and home care dealer networks.  Cardinal Health, Viecura's biggest customer of its unisex pants, *i.e.* covering 60 percent of Viecura's sales, notes that acute care hospitals are its biggest direct sales.  Gov. Ex. 22, Marois Dep. at 17-18.  Mr. Dietrich of Attindas whose company splits a 40 percent share of Viecura's underpants sales with Essity, testified that 90 percent of Attindas

---

[13] Definition of Boy Shorts: underpants or swimsuit bottoms for women that are cut like very brief and very tight-fitting shorts.  *See* Gov. Ex. 32, Dictionary.com. (2025). Dictionary.com. Retrieved from https://www.dictionary.com/browse/boy-shorts on June 13, 2025.

sales of Viecura's unisex pants is to acute care hospitals. Gov. Ex. 23, Dietrich Dep. at 8-10.

Essity's representative testified that TENA's sales segments included home delivery, the hospital

market including post-partum care, the nursing home segment, medical device shops, mixed

channels and pharmacy. Gov. Ex. 31, Forsberg Dep. at 29-31. Thus, the only evidence of

specialty store sales at best is a 1/6[th] share of Essity's market segment of 20 percent of Viecura's

underpants sales while the overwhelming majority of sales is outside of specialty stores.

       v.    <u>The Specific Design Of The Merchandise</u>

     In Viecura's Response to Interrogatory Number 5, it sets forth an explanation of how its

underpants are "specially designed or adapted for the use or benefit of the . . . physically

handicapped." Viecura responded asserting that all of its styles and models at issue have the

following special design features – 1) a non-roll down waistband, 2) circular elastic bands woven

into the body of the underpants to make the garment body hugging, 3) elasticized leg openings

which are not so elasticized as to create "red leg syndrome," 4) a gusset-less crotch (crotch

without an second layer of material placed in the crotch area) large enough to accommodate

absorbent pads. *See* Gov. Ex. 3, Viecura's Response No. 5, to the Government's Interrogatory

Requests. The Viecura unisex knit underpants by themselves are not absorbent or leakproof.

Gov. Ex. 32, Forsburg at 17, Gov. Ex. 3, Viecura's Response No. 14, to the Government's

Interrogatory Requests.

     These features are commonly found in regular stretch-to-fit underpants such as the

Amazon boy shorts noted in Point III(B)(1)(i) above. No underpants user would find a roll down

waistband acceptable – thus regular saleable underpants have non-roll down waistbands. *See*

*e.g.,* Gov. Physical Ex. 26, Boy Shorts. The design incorporating circular elastic bands woven

into the body of the underpants to create a body-hugging garment is a function of utilizing

stretchable polyester type threads in a circular knitting machine. This is a common design and process in all stretch-to-fit underpants. Gov. Ex. 31, Forsberg Dep. at 37-38. Mr. Gallagher admitted that the Amazon Boy Shorts were similarly produced to create a stretchiness in the body of that garment. Gov. Ex. 1, Gallagher Dep. at 144, 146. Further, a gusset-less crotch, *i.e.* a crotch without an extra layer of fabric in the crotch area, is not a feature but a lack of a feature. Nowhere is it explained how a gusset-less crotch assists the chronically disabled. A gusset-less crotch, however, is also found in regular underpants, *i.e.* the Bob Barker disposable knit briefs discussed in Point III(B)(1)(i) are similarly gusset-less. *See* Gov. Ex. 28, Juneau Dep. at 12, 13, 18. Finally, the crotch, capable of accommodating an absorbent pad is a product of the stretch-to-fit fabric making up the pant. Similarly, certain regular stretch-to-fit underpants can accommodate absorbent pads. *See* Gov. Ex. 24, Chughtai Dep. at 59-60.

Lastly, as discussed in Point III(A) above, Viecura packages the exact same unisex knit underpants with the exact same features at issue, *i.e.*, Model Nos. 9152.2.3 (704A), 9152.4.5 (706A), 9152.6.7 (707A), 9152.8(708A) as "Maternity Knit Pants." Marois Dep. at 22. Ms. Marois testified that Cardinal Health provides these maternity pants to the acute care hospital market which are comprised of mostly maternity care users, where the Viecura underpants and maternity pads would be used to manage normal after-birth discharge and blood. Gov. Ex. 22, Marois Dep. at 18-23

Given the common design with regular underpants and the exact same design as those Viecura pants marketed for maternity use (acute use excluded from classification pursuant to subchapter 9817.00.96, HTSUS), Viecura's claimed features do not support that the design is more likely to be used by the chronically handicapped than by those without a chronic handicap.

* * *

In sum, not one of the five factors discussed above supports the conclusion that the underpants at issue are specially designed for the use or benefit of the physically handicapped. The evidence shows that the features of the Viecura unisex knit underpants are beneficial to many groups of people including the chronically incontinent, the temporarily incontinent, the acute post-surgical the patients needing a body-hugging brief to hold a bandage, post-partum mothers, and regular underwear wearers. The Viecura underpants at issue are not specially designed, or marketed to, or primarily used by chronically handicapped persons. Thus, Viecura's claimed secondary classification, *i.e.*, subchapter 9817.00.96, HTSUS, must be rejected.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that judgment be entered granting the Government's motion for summary judgment, sustaining Customs' classification of the imported articles, and dismissing this action.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director
International Trade Field Office

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Attorney for Defendant
Tel. No. (212) 264-9230 or 0480

*Of Counsel*: Fariha Binte Kabir
Office of Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: June 27, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Edward F. Kenny, a senior trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Government's memorandum in support of its motion for summary judgment, dated June 27, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,853 words.

<u>/s/ Edward F. Kenny</u>

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

———————————————————————————
VIECURA INC.,                                        :
                                                     :
                                                     :
                         Plaintiff,                  :     Consol. Court No. 21-00154
                                                     :
              v.                                     :
                                                     :
UNITED STATES,                                       :
                                                     :
                         Defendant.                  :
———————————————————————————   :

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.3 of the Rules of the United States Court of International Trade,

motions for summary judgment must include a separate statement of the material facts as to

which the moving party contends there is no genuine issue to be tried.  In this case, there are no

material facts as to which there exists a genuine issue to be tried and the issues are amenable to

resolution through dispositive motions.  The pertinent undisputed facts of this case are as

follows:

1.   Viecura, Inc. (Viecura) imports and wholesales unisex knit underpants made in the

     People's Republic of China.   *See* Complaint at ¶¶ 3, 11 and 14, Gov. Ex. 2, Sequiera

     Dep. at 8, 15.

2.   At issue in this case are fourteen unisex knit underpants identified by Viecura as

     model numbers 9152.2.3 (Gov. Ex. 4), 9152.4.5 (Gov. Ex. 5), 9152.6.7 (Gov. Ex. 6),

     9152.8 (Gov. Ex. 7), 9155.2.3 (Gov. Ex. 8), 9155.4 (Gov. Ex. 9), 9155.5 (Gov. Ex.

     10), 9155.6 (Gov. Ex. 11), 9159.2.3 (Gov. Ex. 12), 9159.4 (Gov. Ex. 13), 9159.5

     (Gov. Ex. 14), 6421100/9182.3 (Gov. Ex. 15), 6422200/3605500/9182.4 (Gov. Exs.

     16 and 17), and 3606600/9182.6, (Gov. Ex. 18).  *See* samples produced by Viecura

and submitted as Gov. Physical Exhibits 4-18, and Client Item Number List produced by Viecura during discovery as Viecura Bates No. 00307, (Gov. Ex. 19)  A fifteenth model is listed on the Client Item Number List, *i.e.* 9182.8 but that model is not listed on the Entry Breakdown Spreadsheet (Confidential Gov. Ex. 20) and therefore is not one of the entries in this case.

3. The product, *i.e.*, the fourteen models of Viecura unisex knit underpants, are imported without any pads. Gov. Physical Exhibits 4-18,

4. The unisex knit underpants are comprised between 90 percent and 96 percent by weight of polyester, with the remainder spandex or elastane yarns.  Complaint at ¶ 11.

5. Viecura's unisex knit underpants is manufactured utilizing a circular knitting process creating a circular tube of elastic bands knitted horizontally across the fabric comprising a seamlessly constructed pant, designed to ensure that the pant is held tight against the body.  Complaint at ¶ 14, Gov. Ex. 3 – Viecura's Response to the Government's First Request for Interrogatories at Response No. 5. Gov. Ex. 1, Gallagher Dep. at 38-39.

6. Viecura's unisex knit underpants have a wide elastic waistband with a width slightly over one inch, which assists in preventing the underpants from rolling down.   Gov. Ex. 1, Gallagher Dep. at 34, Ex. 3 – Viecura's Response to the Government's First Request for Interrogatories at Response No. 5.

7. The hemmed leg openings of Viecura's unisex knit underpants are manufactured with adequate but not uncomfortable tension to assist the overall snug, body hugging design of the pant.  Gov. Ex. 1, Gallagher Dep. at 36, 66.

2

8. The crotch/groin of Viecura's unisex knit underpants is designed to stretch to accommodate a variety of pads. Gov. Ex. 24, Chughtai Dep. at 44-45.

9. The unisex knit underpants by themselves have no capability to absorb bodily fluids. Gov. Ex. 3, Viecura's Response to the Government's First Set of Interrogatories, at Response 14.

10. It is the snug fit of Viecura's unisex knit underpants, that provides the fixation, *i.e.* the ability to keep the pad in place against the body. Gov. Ex. 1, Gallagher Dep. at 38-39.

11. Viecura does not know all the kinds of pads that can be used with its unisex knit underpants as Viecura is not involved with pad design. Gov. Ex. 1, Gallagher Dep. at 30 and 38.

12. Mr. Gallagher, Viecura's President admitted that pad design is outside of his competence, and he is not involved with the types of pads available for women's health and hygiene issues including menstrual pads. Gov. Ex. 1, Gallagher Dep. at 82.

13. The stretch-to-fit Women's Boy Short product, *i.e.* Gov. Ex. 26, is made on a similar circular knitting machine as Viecura's unisex knit underpants. Gov. Ex. 1, Gallagher Dep. at 143-44.

14. The stretch-to-fit Women's Boy Short product, *i.e.*, Gov. Ex. 26 has a similar stretchiness to the Viecura unisex knit underpants. *See* Gov. Physical Exs. 4-18 and Gov Physical Ex. 26, Gov. Ex. 1, Gallagher Dep. at 146.

15. The stretch-to-fit Women's Boy Short product, *i.e.*, Gov. Ex. 26 has a similar waistband to the Viecura unisex knit underpants. *See* Gov. Physical Exs. 4-18 and Gov Physical Ex. 26. Gov. Ex. 1, Gallagher Dep. at 146.

16. The stretch-to-fit Women's Boy Short product (Gov. Ex. 26) has similar leg openings to the Viecura unisex knit underpants. *See* Gov. Physical Exs. 4-18 and Gov Physical Ex. 26, Gov. Ex. 1, Gallagher Dep. at 146.

17. The stretch-to-fit Women's Boy Short product (Gov. Ex. 26) has a similar seamless side construction as Viecura's unisex knit underpants. *See* Gov. Physical Exs. 4-18 and Gov Physical Ex. 26, Gov. Ex. 1, Gallagher Dep. at 146.

18. Viecura's customers are three major U.S. healthcare distributors, *i.e.*, Cardinal Health, Attindas and Essity. Gov. Ex. 2, Sequiera Dep. at 8, and 27.

19. Viecura's Vice President of Sales and Marketing confirmed that Cardinal Health comprises 60 percent of Viecura's sales, while Essity and Attindas combined amount to the remaining 40 percent. Gov. Ex. 2, Sequiera Dep. at 15.

20. One of Viecura's client's, Essity, in its sales brochure describes Viecura's unisex knit underpants as being "designed like regular underwear to support and hold TENA pads in place." Gov. Ex. 31, Forsberg Dep. at 37.

21. Viecura sells four models of its unisex knit underpants to Cardinal Health as both "Maternity Knit Pants" and "Incontinence Knit Pants" products depending on the finished packaging they are inserted into, *i.e.*, Model Nos. 9152.2.3 (704A or M), 9152.4.5 (706A or M), 9152.6.7 (707A or M), and 9152.8(708A or M). *See* Gov. Physical Exs. 4, 5, 6, 7 and 33, Gov. Ex. 22, Marois Dep. at 14-15, Gov. Ex. 21,

Viecura's Response to the Government's Second Set of Interrogatories at Response 15.

22. Viecura admits it does not know specifics about the end users of the products it sells to three main healthcare clients, *i.e.*, Cardinal Health, Essity and Attindas. Gov. Ex. 1, Gallagher Dep. at 131, 132, 134, 156.

23. Cardinal Health recommends the use of Viecura's Maternity Knit Pants with maternity pads and peri-pads. *See* Cardinal Health webpage at https://www.cardinalhealth.com/en/product-solutions/medical/woman-and-baby/mom-and-baby-care/mom-care/wings-maternity-knit-pants.html referenced by Viecura in Gov. Ex. 21, Viecura's Response to the Government's Second Set of Interrogatories at Response 15 (with attached printed Cardinal Health document from the referenced Cardinal Health website), Gov. Ex. 2, Sequiera Dep. at 32.

24. Cardinal Health's sales to acute care facilities equals 43 percent of Cardinal Health's total sales of Viecura unisex knit underpants. Thereafter, Cardinal Health sells approximately 56 percent of the underpants to their distribution group where their end use is unknown. Gov. Ex. 22, Marois Dep. at 17-18. The remaining approximate 1 percent of sales of the underpants are to long-term care facilities. Gov. Ex. 22, Marois Dep. at 17-18.

25. Cardinal Health's sales to the hospital market is the acute care market comprised mostly of maternity care users, where the Viecura unisex knit underpants and maternity pads would be used for the comfort of new mothers and to manage normal after-birth discharge and blood. Gov. Ex. 22, Marois Dep. at 17-23.

26. The unisex knit underpants are also used in hospitals for post-surgical applications such as holding a bandage in place over an abdominal surgical wound.  Marois Dep. at 24.

27. Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners, another of Viecura's customers, testified that the overwhelming majority, up to 90 percent, of Attindas's sales of the Viecura unisex knit underpants are to the acute care hospital market for post-partum maternity care.  Gov. Ex. 23, Dietrich Dep. at 8-11.

28. Viecura's unisex knit underpants can be used with an appropriate pad to assist either the temporarily incontinent or chronically incontinent in managing their condition. Gov. Ex. 24, Chughtai Dep. at 82.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director
International Trade Field Office

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
Of Counsel: Fariha Binte Kabir          26 Federal Plaza, Room 346
Office of Assistant Chief Counsel       New York, New York 10278
U.S. Customs and Border Protection      Attorney for Defendant
Tel. No. (212) 264-9230 or 0480

Dated: June 27, 2025

6