UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

---

VIECURA INC.,                                    :
                                                 :
                                                 :
                        Plaintiff,               :       Consol. Court No. 21-00154
                                                 :
            v.                                   :
                                                 :
UNITED STATES,                                   :
                                                 :
                        Defendant.               :
---                                              :

**DEFENDANT'S REPLY MEMORANDUM OF
LAW IN RESPONSE TO PLAINTIFF VIECURA INC.'S OPPOSITION
TO THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Yelena Slepak, Esq.
John Flanagan, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ............................................................................................................... 11

  I.  THERE IS NOTHING SPECIALLY DESIGNED ABOUT
     PLAINTIFF'S STRETCH-TO-FIT UNDERPANTS ........................................................ 4

  II.  THE IMPORTED UNDERPANTS ARE MARKETED FOR POSTPARTUM USE
     WHICH IS AN ARCHETYPICAL TRANSIENT CONDITION ................................... 10

  III.  EVIDENCE SHOWS THE IMPORTED STRETCH-TO-FIT UNDERPANTS ARE
     USED IN THE ACUTE CARE HOSPITAL SETTING FOR OTHER THAN
     CHRONIC INCONTINENCE ......................................................................................... 12

  IV.  VIECURA'S ALLEGATIONS THAT THERE ARE FACTS IN DISPUTE
     AMOUNTS TO VAGUE, UNSUBSTANTIATED CLAIMS ......................................... 14

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*,
731 F.2d 831 (Fed. Cir. 1984). .................................................................................9

*Danze, Inc. v. United States*,
319 F.Supp.3d 1312 (Ct. Int'l Trade 2018). ..............................................................5

*G.G. Marck & Assocs., Inc. v. United States*, No. 08-00306,
2015 WL 3757040 (CIT June 17, 2015) (not reported in Federal Supplement) ..........................6

*Janex Corp. v. United States*,
80 Cust. Ct. 146 (1978) (not reported in Federal Supplement) ...................................6

*Jing Mei Automotive (USA) v. United States*,
682 F.Supp.3d 1354 (Ct. Int'l Trade 2023) ..............................................................5

*Marubeni America Corp. v. United States,*
821 F.Supp. 1521 (Ct. Int'l Trade, 1993) ...............................................................14

*The Shirwin-Williams Co. v. United States,*
38 CCPA 13 (1950) ...................................................................................................7

*Sigvaris, Inc. v. United States*,
899 F.3d 1308 (Fed. Cir. 2018)...................................................................................8

*Simod Am. Corp. v. United States*,
872 F.2d 1572 (Fed. Cir. 1989) .................................................................................5

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*
833 F.2d 1560 (Fed. Cir. 1987) ..........................................................................*9, 19*

*United States v. Citroen,*
223 U.S. 407 (1911) ...............................................................................................7, 8

<u>**Harmonized Tariff Schedule of The United States**</u>

General Rules of Interpretation 3(A) .........................................................................4

Chapter 61

    US Note 9.......................................................................................................4

Heading 6108

    Subheading 6108.22.90 ................................................................................... 1, 4

Chapter 98

    Subchapter XVII

    US Note 4(a) .................................................................................................... 1, 5

    US Note 4(b) .................................................................................................... 1, 5

    Heading 9817

    Subheading 9817.00.96 ...................................................................................*passim*

**Rules**

USCIT Rule 56 .......................................................................................................... 9

USCIT Rule 56.3 ..................................................................................................... 15

**Other Authorities**

U.S. Customs Service Implementation of the Duty–Free Provisions of the Nairobi Protocol,
    Annex E, to the Florence Agreement, T.D. 92–77,
    26 Cust. Bull. & Dec. 240, 246 (1992) ................................................................ 8

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| VIECURA INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Consol. Court No. 21-00154 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF VIECURA INC.'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND IN <u>SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION</u>

Defendant, the United States (the Government), submits this reply memorandum in response to plaintiff Viecura Inc.'s (Viecura) opposition to the Government's motion for summary judgment and, additionally, in support of our motion for summary judgment.

### <u>INTRODUCTION</u>

Viecura's imported unisex stretch knit underwear of man-made fibers are classified under subheading 6108.22.90 of the Harmonized Tariff Schedule of the United States (HTSUS), but are not eligible for a secondary classification under subheading 9817.00.96, HTSUS, a duty-free provision that implements the Nairobi Protocol, because in its condition as imported the stretch knit underwear is not "specially designed" for "physically or mentally handicapped persons."  U.S. Notes 4(a) and (b) to Subchapter XVII, Chapter 98, HTSUS (implementing the Nairobi Protocol).  No question of material fact exists regarding these conclusions.

**BACKGROUND**

The facts and background of this case are set forth in our moving papers, and we do not repeat that discussion here. However, we highlight a few pertinent facts that support our position and that Viecura, in its response papers, does not dispute in accord with our cited evidence:

Viecura imports and wholesales unisex knit underpants made in the People's Republic of China. Resp. to Gov't SOMF 1. At issue in this case are fourteen unisex knit underpants identified by Viecura as model numbers 9152.2.3 (Gov. Ex. 4), 9152.4.5 (Gov. Ex. 5), 9152.6.7 (Gov. Ex. 6), 9152.8 (Gov. Ex. 7), 9155.2.3 (Gov. Ex. 8), 9155.4 (Gov. Ex. 9), 9155.5 (Gov. Ex. 10), 9155.6 (Gov. Ex. 11), 9159.2.3 (Gov. Ex. 12), 9159.4 (Gov. Ex. 13), 9159.5 (Gov. Ex. 14), 6421100/9182.3 (Gov. Ex. 15), 6422200/3605500/9182.4 (Gov. Exs. 16 and 17), and 3606600/9182.6, (Gov. Ex. 18). Resp. to Gov't SOMF 2. The products, *i.e.*, the fourteen models of Viecura unisex knit underpants, are imported without any pads. Resp. to Gov't SOMF 3.

The unisex knit underpants are comprised between 90 percent and 96 percent by weight of polyester, with the remainder spandex or elastane yarns. Resp. to Gov't SOMF 4. Viecura admits that unisex knit underpants at issue are manufactured utilizing a circular knitting machine known as a Santoni machine. The circular knit machine creates a circular tube of primarily polyester fibers, which include several circular bands of tensioned elastic across the fabric. Resp. to Gov't SOMF 5. Viecura's unisex knit underpants have a wide elastic waistband with a width slightly over one inch, which assists in preventing the underpants from rolling down. Resp. to Gov't SOMF 6. The

hemmed leg openings of Viecura's unisex knit underpants are manufactured with adequate but not uncomfortable tension to assist the overall snug, body hugging design of the pant. Resp. to Gov't SOMF 7. The crotch/groin of Viecura's unisex knit underpants is designed to stretch to accommodate a variety of pads. Resp. to Gov't SOMF 8. The unisex knit underpants by themselves have no capability to absorb bodily fluids. Resp. to Gov't SOMF 9.

It is the snug fit of Viecura's unisex knit underpants that provides the fixation, *i.e.*, the ability to keep the pad in place against the body. Resp. to Gov't SOMF 10.

Viecura does not know all the kinds of pads that can be used with its unisex knit underpants as Viecura is not involved with pad design. Resp. to Gov't SOMF 11. Mr. Gallagher, Viecura's President, admitted that pad design is outside of his competence, and he is not involved with the types of pads available for women's health and hygiene issues including menstrual pads. Resp. to Gov't SOMF 12.

Viecura's Vice President of Sales and Marketing confirmed that Cardinal Health, one of Viecura's customers, comprises 60 percent of Viecura's sales, while Essity and Attindas, two other of Viecura's customers, account for the remaining 40 percent of Viecura's sales. Resp. to Gov't SOMF 19.

Viecura sells four models of its unisex knit underpants to Cardinal Health as both "Maternity Knit Pants" and "Incontinence Knit Pants" products depending on the finished packaging they are inserted into, *i.e.*, Model Nos. 9152.2.3 (704A or M), 9152.4.5 (706A or M), 9152.6.7 (707A or M), and 9152.8(708A or M). Viecura Resp. to Gov't SOMF 21. Viecura admits that it does not know specifics about the end users of the products it sells to three main healthcare clients, *i.e.*, Cardinal Health, Essity and

Attindas.  Resp. to Gov't SOMF 22.

## **ARGUMENT**

### I.    THERE IS NOTHING SPECIALLY DESIGNED ABOUT PLAINTIFF'S STRETCH-TO-FIT UNDERPANTS

The undisputed facts show that the goods in question are unisex knit underpants. Viecura entered the merchandise as underpants pursuant to subheading 6108.22.90, HTSUS, providing for "Women's or girls' slips, petticoats, briefs, panties, night dresses, pajamas, negligees, bathrobes, dressing gowns and similar articles, knitted or crocheted: . . . Of man-made fibers: . . . Other."  Unisex underwear of this Chapter are classified as women's or girl's garments according to U.S. Note 9 in Chapter 61, HTSUS.  Here, plaintiff does not dispute that subheading 6108.22.90, HTSUS is applicable.  The only issue is whether the merchandise is entitled to a "secondary" classification under the Nairobi Protocol provisions codified at subheading 9817.00.96, HTSUS, which would make plaintiff's entries duty-free if the underpants are specially designed for the use or benefit of the chronically disabled.  *See* Pl. Opp. Br. at 2.

Regardless of whether the Chapter 98 provisions are, as noted by plaintiff, "secondary"[1] provisions or just displace an otherwise applicable provision due to the suspension of GRI 3(a), the Chapter 98 preferential treatment provisions are only applicable if all the conditions and requirements, including any applicable regulations, are met.  *See* Chapter 98 (Special Classification Provision), Note 1 of the U.S. Notes; *see*

---

[1] Chapter 98 (Special Classification Provision), Note 1 of the U.S. Notes states: "The provisions of this chapter are not subject to the rule of relative specificity in general rule of interpretation 3(a). Any article which is described in any provision in this chapter is classifiable in said provision if the conditions and requirements thereof and of any applicable regulations are met."

*also Danze, Inc. v. United States*, 319 F.Supp.3d 1312, 1323 (Ct. Int'l Trade 2018).

These conditions consider whether the articles are "specially designed" for "physically or

mentally handicapped persons".  U.S. Notes 4(a) and (b) to Subchapter XVII, Chapter 98,

HTSUS (implementing the Nairobi Protocol).  The Notes further clarify that specially

designed for physically handicapped persons, are products designed for those with

permanent or chronic physical impairment.  *Id*.

      Viecura's unisex underwear are not specially designed as required by Chapter 98.

The observable features of the Viecura unisex knit underpants at issue[2] demonstrate that

they are similar to general commodity stretch-to-fit "boy shorts" underwear.  *See e.g.*,

Gov. Physical Ex. 26, Boy Shorts.  Specifically, the similarities with general commodity

stretch-to-fit boy shorts are as follows: both are of tubular seamless design, made of a

stretch-to-fit fabric with a defined waistband and hemmed leg openings.  *See* FN 2.

While Viecura argues that there are material facts in dispute regarding physical features,

Pl. Opp. Br. at 3, 13-14, that is incorrect.  The samples of the articles before the Court are

"potent witnesses" as to the factual nature of the merchandise and their respective

classifications even when a Court is deciding a summary judgment motion.  *See Jing Mei*

*Automotive (USA) v. United States*, 682 F.Supp.3d 1354, 1363 (Ct. Int'l Trade 2023);

*Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) ("[T]he

merchandise itself is often a potent witness in classification cases.");  *G.G. Marck &*

---

[2] Specifically, the fourteen knit stretch-to-fit underpants are identified by Viecura as
model numbers 9152.2.3 (Gov. Ex. 4), 9152.4.5 (Gov. Ex. 5), 9152.6.7 (Gov. Ex. 6),
9152.8 (Gov. Ex. 7), 9155.2.3 (Gov. Ex. 8), 9155.4 (Gov. Ex. 9), 9155.5 (Gov. Ex. 10),
9155.6 (Gov. Ex. 11), 9159.2.3 (Gov. Ex. 12), 9159.4 (Gov. Ex. 13), 9159.5 (Gov. Ex.
14), 6421100/9182.3 (Gov. Ex. 15), 6422200/3605500/9182.4 (Gov. Exs. 16 and 17), and
3606600/9182.6, (Gov. Ex. 18).  *See also* Resp. to Gov't SOMF 2.

*Assocs., Inc. v. United States*, No. 08-00306, 2015 WL 3757040, at \*9 (CIT June 17, 2015) (not reported in Federal Supplement); *Janex Corp. v. United States*, 80 Cust. Ct. 146, 148 (1978) (not reported in Federal Supplement) ("[S]amples are potent witnesses and have great probative effect respecting the purpose for which an article is designed.") (citations omitted).

Moreover, as we discussed in Point III(B)(1)(ii) of our moving brief, Viecura's underpants are "designed like regular underwear," "go on like regular underwear," and are similar to "boy shorts" stretch-to-fit underwear. Gov. Ex. 31, Forsberg Dep. at 37, 38. In other words, Viecura's underpants have features "commonly seen in underpants." Pl. Opp. Br. at 3. In fact, brochures for the sale of Viecura's underpants by Cardinal Health, Viecura's largest distributor of its unisex knit underpants, maintain that Viecura's underpants can be used alone or with pads, Gov. Ex. 22, Marois Dep. at 22, just like regular underwear. Plaintiff's expert, Dr. Chughtai, also testified that some regular stretch-to fit underpants could be suitable for use with incontinence pads. Gov. Ex. 24, Chughtai Dep. at 54-55, 59-61. Stretchiness is a common physical feature with regular stretch-to-fit underpants, and non-handicapped people also use regular stretch-to-fit underpants to successfully hold various types of pads, *e.g.*, menstrual pads, etc.

Further, as we discussed in Point III(B)(1)(i) of our moving brief, the Viecura unisex knit underpants are very similar in construction and quality to the Bob Barker disposable knit underpants distributed as general uniform underpants in jail institutions, demonstrating the lack of "special design" for persons with chronic physical impairment. The Bob Barker unisex briefs are marketed toward county jails to be worn by the general inmate population as underwear. Gov. Ex. 28, Juneau Dep. at 9-10. The Bob Barker

6

unisex disposable briefs are stretch nylon and are one size fits all. Gov. Ex. 28, Juneau

Dep. at 10. They have a colored waistband, a stretch-to-fit body, a seam in the crotch area

and defined elasticized leg holes.  Gov. Ex. 28, Juneau Dep. at 10-12.  The Bob Barker

unisex disposable briefs have a gusset-less crotch, *i.e.* they are made without a piece of

fabric covering the seam connecting the middle crotch area of the pants.  Gov. Ex. 28,

Juneau Dep. at 12-13.  The Bob Barker unisex disposable briefs have a similar frugal

quality to them consistent with the quality of the Viecura underpants. *See* Gov. Physical

Ex. 27, Bob Barker sample.  The similarity of Viecura's underpants to the Bob Barker

underpants provides additional evidence that Viecura's goods are not specially designed

"as part of a two-piece incontinence care system."  Pl. Opp. Br. at 1.

Additionally, Viecura's unisex knit underpants are not identifiable as an

incontinence relief product at the time of importation because the underpants have no

capacity to absorb an involuntary release of urine - an essential attribute of products

alleviating the conditions of incontinence.  *See* Resp. to Gov't SOMF 9.  It is well settled

that the imported merchandise is classified with reference to its condition as imported.[3]

*United States v. Citroen*, 223 U.S. 407 (1911).  "Condition as imported" refers to the

condition of the goods when they are brought within the jurisdiction of the United States

with the intent to unlade (discharge cargo).  *The Shirwin-Williams Co. v. United States,*

38 CCPA 13, 18 (1950).

In *Citroen*, loose drilled pearls, unset and unstrung in their condition as imported

---

[3] The understanding that imports are classified in the condition as imported assumes that
such imported condition was not the result of deception, disguise or artifice resorted to
for the purpose of perpetrating a fraud upon the revenue.  *United States v. Citroen*, 223
U.S. 407, 415 (1912).

were classifiable as pearls in their natural state, not strung or set, rather than as jewelry, including pearls set or strung.  223 U.S. at 413.  This classification determination was based on the as-imported condition of the pearls, even though the evidence showed that the pearls had been formerly strung and exhibited to show their desirability as a necklace. *See id.* at 415, 423.  Here, as imported, Viecura's unisex stretch-to-fit underpants design does not reveal any special features with which to absorb urine that would identify them as being for the use or benefit of the chronically disabled specifically as incontinence pants.  To the extent that Viecura claims that its underpants are part of a two-piece incontinent care system, Pl. Opp. Br. at 1, Viecura doesn't sell the underpants with pads and there is nothing that limits the underpants to use with incontinence pads or any pad at all.  In fact, Viecura itself does not know what type pads (large incontinence pads, small incontinence pads, maternity/postpartum pads, menstrual pads) may be used with the underpants, or if pads are used at all.  *See* Resp. to Gov't SOMF 11.

Moreover, the Federal Circuit in *Sigvaris, Inc., v. United States*, 899 F.3d 1308 (Fed. Cir. 2018), adopted U.S. Customs and Border Protection's five-factor test to determine if goods meet the requirements for Chapter 98 as being specially designed for the use or benefit of the chronically disabled.  The five factors used by Customs and adopted by the Federal Circuit in *Sigvaris* are the following: 1) the physical properties of the merchandise, 2) whether the merchandise is solely used by the handicapped, 3) the specific design of the merchandise, 4) the likelihood that the merchandise is useful to the general public, and 5) whether the merchandise is sold in specialty stores.  *See Sigvaris* at 1314, 1315 and Gov. Ex. 25, U.S. Customs Service Implementation of the Duty–Free Provisions of the Nairobi Protocol, Annex E, to the Florence Agreement, T.D. 92–77, 26

Cust. Bull. & Dec. 240, 246 (1992).  In our moving brief we carefully analyzed each of the five factors and cited both documentary evidence and witness testimony in support of each.  Gov't Br. at 18-29.  Plaintiff in its opposition, claims there are questions of fact (when there are none) [4] and has provided only vague and unsupported conclusions to contest our position while providing no evidence to the contrary.  Pl. Opp. Br. at 21-24.

Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute.  *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.* 833 F.2d 1560, 1562 (Fed. Cir. 1987).  In countering a motion for summary judgment, more is required than mere assertions of counsel.  The Federal Circuit has stated that "[t]he non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd*., 731 F.2d 831, 836 (Fed. Cir. 1984).  Upon review of Viecura's opposition papers, Viecura failed to provide any countering evidence of specific facts that would create a genuine factual dispute meriting a trial regarding the viability of its claim for duty-free treatment for its asserted special design for the use or benefit of the chronically disabled.

Accordingly, Viecura's underpants are not specially designed such that they would receive the benefit of Chapter 98, and Viecura has presented no evidence to refute our position or create a genuine issue of material fact that would preclude the conclusion

---

[4] We address plaintiff's so-called questions of fact in Section IV of this reply brief.

that Chapter 98 does not apply to Viecura's merchandise.

II.    **THE IMPORTED UNDERPANTS ARE MARKETED FOR POSTPARTUM USE WHICH IS AN ARCHETYPICAL TRANSIENT CONDITION**

As further indication that Viecura's unisex stretch underpants are not specially designed for the use or benefit of the chronically disabled, major hygiene and health care companies including Cardinal Health, Essity and Attindas, market Viecura's underwear as underpants for postpartum use.  Indeed, Viecura has admitted that it sells four of the unisex knit underpants models to Cardinal Health in finished packaging recognizing a use as *either* incontinence or maternity, *i.e.*, Model Nos. 9152.2.3 (704A or M), 9152.4.5 (706A or M), 9152.6.7 (707A or M), and 9152.8(708A or M). Viecura Resp. to Gov't SOMF 21.  More specifically, Viecura identifies the packaging of these unisex knit underpants models either as "Incontinence Knit Pants" with the 700 series Model No. designation "A" or "Maternity Knit Pants" with the 700 series Model No. designation "M" depending on how Cardinal Health requests the final packaging.  Resp. to Gov't SOMF 21.  The Cardinal Health 700 series underpants designated A or M are exactly the same regardless of the designation on the packaging.  Further, Viecura admits these models designated as "maternity" have the same design as all of the rest of the unisex stretch to fit underwear at issue.  Resp. to Gov't SOMF 2, 3, 4, 5, 6, 7, 8, and 21.

Maternity use of the stretch to fit underwear includes combining the underwear with either maternity pads to manage postpartum vaginal discharge and blood or perineal cold packs to alleviate discomfort.  Viecura's expert Dr. Chughtai testified that maternity pads are utilized in the postpartum setting to deal with incontinence, vaginal discharge and blood.  Gov. Ex. 24, Chughtai Dep. at 56, 57.  In addition to keeping maternity pads

10

in place, the stretch-to-fit underwear can also assist in holding perineal cold packs in place to provide the mother with relief in the postpartum period. Gov. Ex. 24, Chughtai Dep. at 57. Contrary to Viecura's assertion that we cite to no "shred of authority or evidence that post-maternity care" is acute or transient, Pl. Opp. Br. at 17, Dr. Chughtai agrees that typically postpartum issues, *i.e.* bleeding, discharge and pain, are temporary acute issues. Chughtai Dep. at 57. More specifically, Dr. Chughtai noted that regarding postpartum incontinence, he counsels patients that such incontinence usually resolves in weeks to months and is typically a transient condition. Gov. Ex. 24, Chughtai Dep. at 81-82. Sales materials from Viecura's client Cardinal Health recommending the use of the Maternity Knit Pants with maternity pads and peri-pads corroborate these maternity uses. *See* Gov. Exhibit 21, Viecura's Response to the Government's Second Set of Interrogatories at Response 15 which includes Cardinal Health document referenced by Viecura at https://www.cardinalhealth.com/en/product-solutions/medical/woman-and-baby/mom-and-baby-care/mom-care/wings-maternity-knit-pants.html.

Ms. Cynthia Marois, Global Product Manager for Cardinal Health, testified that Cardinal Health sells the Viecura underpants to, among other buyers, hospitals. Marois Dep. at 17. Consistent with Viecura's expert Dr. Chughtai, Ms. Marois described the Viecura underpants combined with Cardinal Health's maternity pads would be used for normal after-birth discharge and blood. Gov. Ex. 22, Marois Dep. at 18-23. Ms. Marois showed the acute care hospital market as buying a substantial amount of maternity care underpants at issue. Gov. Ex. 30 Marois Dec. (listing includes units of 700 Series M (maternity) underpants sold to hospitals).

As Viecura's complaint sets forth that the design features of all the models at issue are the same, all the models are indistinguishable from those designated as maternity knit pants used to alleviate postpartum symptoms. Therefore, Viecura cannot sustain its burden of showing that its products are specially designed for the use or benefit of chronically handicapped persons.

**III.    EVIDENCE SHOWS THE IMPORTED STRETCH-TO-FIT UNDERPANTS ARE USED IN THE ACUTE CARE HOSPITAL SETTING FOR OTHER THAN CHRONIC INCONTINENCE**

Viecura's own expert and healthcare customers admit that the underpants are used in acute care and for temporary conditions, undercutting Viecura's argument that its underpants are for the chronically handicapped. Plaintiff's expert Dr. Chughtai testified that the unisex stretch-to-fit underwear when used with a pad, can assist in alleviating issues involved with involuntary urine discharge associated with both chronic and temporary incontinence. Gov. Ex. 24, Chughtai Dep. at 82. Dr. Chughtai described several conditions wherein temporary incontinence is common including the following: (1) functional incontinence, the result of a loss of the ability to get to a toilet, *i.e.* during the recovery from a hip-replacement or other lower-extremity orthopedic procedure, Gov. Ex. 24, Chughtai Dep. at 13, 14, 18, 19; (2) transient incontinence brought about by a change in medication, Chughtai Dep. at 18, 19; (3) postpartum stress incontinence, Chughtai Dep. at 17, 18; and, (4), transient incontinence brought about by urological surgery, *i.e.* prostate or bladder surgery. Chughtai Dep. at 30, 31.

The largest trackable percentage of plaintiff's unisex knit pants go to acute care hospitals. Acute care hospitals are the situs of most deliveries and surgeries bringing about the temporary incontinence noted above. Cardinal Health's Ms. Marois testified

that 43 percent of the Viecura unisex knit underpants were sold directly from Cardinal Health to acute care facilities and 56 percent to their distribution groups. Gov. Ex. 22, Marois Dep. at 17-18. As stated above, Ms. Marois showed that maternity care users are a significant segment of the acute care hospital market regarding Viecura's imported goods at issue. Gov. Ex. 22, Marois Dep at 18-23 and Gov. Ex. 30 Marois Dec. (listing includes units of 700 Series M (maternity) underpants sold to hospitals). Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners testified that the overwhelming majority of the Viecura underpants Attindas buys is sold to hospitals. Gov. Ex. 23, Dietrich Dep. at 8-9. He said that 90 percent goes to hospitals and some to nursing homes and the home care network. Dietrich Dep. at 8-9. Combined, this represents the largest trackable portion of end users of Viecura's underwear.

The evidence shows that Cardinal Health sells Viecura's underpants in part to assist in fixation, *i.e.*, hold a bandage in place over an abdominal wound. Gov. Ex. 22, Marois Dep. at 24. Cardinal Health's catalog features Viecura's stretch knit underpants and stretch mesh underpants with the advertising copy which reads "[u]se alone or to secure liners, pads or wound dressing in place." Gov. Ex. 29, Cardinal Health Catalog. Plaintiff claims that utilizing the stretch to fit underwear to assist in fixation of abdominal bandages is a "fugitive use" citing to its Exhibit 3 (A Food and Drug Administration, webpage noting that 21 CFR Sec. 876.5920 sets forth that a "protective garment for incontinence" are products consisting of an absorbent padding and a fluid barrier which are considered Class 1 and exempt from premarket notification procedures").[5] Pl. Opp.

---

[5] Notwithstanding that Pltf's Ex. 3 is irrelevant to the discussion, the definitions and classifications by other Agencies for their own regulatory purposes are not intended to

Br. at 21, 23.  However, plaintiff's Exhibit 3 is irrelevant and does not support its point as it describes a different product and does not cover Viecura's imported underpants which do not have "absorbent padding and a fluid barrier."  *See* Resp. to Gov't SOMF 9.

Further, Viecura is well aware, and proud that its stretch to fit underwear can assist in fixation of bandages.  Viecura's 30(b)(6) witness Mr. Sequiera, its Vice President of Sales and Marketing in the United States, testified that:

> We have heard that -- these are fixation pants, so they're great to hold anything in place, even though they're designed for incontinence, chronic incontinence. We have heard that because of the severity of fixation, they can hold bandages in place, for example, but that's we've been told by our customers where these are going.

Gov. Ex. 2 Sequiera Dep. at 32, 33. See *also* Gov. (Confidential) Ex. 34 Viecura Group Declaration of Conformity dated September 19, 2012 (declaration acknowledging the same use they now claim is fugitive).

The evidence shows that the features of the Viecura unisex knit underpants are beneficial to many groups of people including the chronically incontinent, the temporarily incontinent, the acute post-surgical patients needing a body-hugging brief to hold a bandage, post-partum mothers, and regular underwear wearers.  Plaintiff has provided no evidence to show that Viecura's underpants at issue are specially designed, or marketed to, or only used by chronically handicapped persons.

## IV.    VIECURA'S ALLEGATIONS THAT THERE ARE FACTS IN DISPUTE AMOUNTS TO VAGUE, UNSUBSTANTIATED CLAIMS

Despite the undisputed evidence discussed above demonstrating that Viecura's underpants are not specially designed for physically handicapped persons, *i.e.*, those with

---

control customs classification.  *See, e.g., Marubeni America Corp. v. United States*, 821 F.Supp. 1521, 1528-29 (Ct. Int'l Trade, 1993)

permanent or chronic physical impairment, Viecura makes many claims of "factual

disputes." However, Viecura fails to cite to evidence or describe how such "factual

disputes" are material to the outcome of this case, even if a legitimate dispute were to

exist. None of Viecura's claims create a material issue of fact preventing summary

judgment in our favor.

      Specifically, Viecura claims in its opposition brief that the Government did not

mention in its Rule 56.3 statement 1) the presence of elastic bands around the

circumference of plaintiff's pants, 2) the seamless side construction, and 3) the lack of a

gusset. Pl. Opp. Br. at 3. Viecura is incorrect as it ignores not only the significance of

the points we set forth in our motion papers, but also our supporting evidence.

      The Government's statement number 5 of its Rule 56.3 states:

> Viecura's unisex knit underpants is manufactured utilizing a circular
> knitting process creating a circular tube of elastic bands knitted
> horizontally across the fabric comprising a seamlessly constructed pant,
> designed to ensure that the pant is held tight against the body. Complaint
> at ¶ 14, Gov. Ex. 3 – Viecura's Response to the Government's First
> Request for Interrogatories at Response No. 5. Gov. Ex. 1, Gallagher Dep.
> at 38-39.

Our Statement of Material Facts Not in Issue acknowledges the presence of elastic bands

around the circumference of the pants. The importance of those bands is that they create

the body hugging stretch-to-fit quality of both the plaintiff's unisex stretch-to-fit

underwear which is also evident in regular stretch-to-fit underwear like the example of

the womens' boy shorts. *See* Gov. Physical Exhibits 4-18 as compared with Government

Physical Exhibit 26. *See also* Resp. to Gov't SOMF 14 and Gov. Exhibit 24: Chughtai

Dep. at 59-61.

      Next, Viecura's claims that regular underwear does not have seamless side

construction, and that we did not make seamless side construction part of our Statement of Material Facts not in issue. Both claims are incorrect. *See* Gov. SOMF No. 17 and Resp. to Gov. SOMF 17. Seamless side construction is the result of the underwear being manufactured on a machine creating tubular fabric. Viecura has admitted that the stretch-to-fit example of womens' boy shorts (Gov. Physical Exhibit 26) is also of seamless side construction – the same as the Viecura product at issue. Gov. Ex. 1, Gallagher Dep. at 146.

Viecura additionally claims that its gusset-less crotch "feature" is a distinguishing factor in its underwear, however, it never explains how the gusset-less nature of its underwear is a material feature sought out by suffers of incontinence. The fact that Viecura's underwear does not have a gusset is reflective of the frugal quality of the product. This is similar to the Bob Barker unisex disposable briefs, *i.e.* general commodity type disposable underwear, which also have a gusset-less crotch, *i.e.* they are made without a piece of fabric covering the seam connecting the middle crotch area of the pants. Gov. Ex. 28, Juneau Dep. at 12-13. The Bob Barker unisex disposable briefs are consistent with the quality of the Viecura underpants. *See* Gov. Physical Ex. 27, Bob Barker sample. As noted, the Bob Barker briefs are marketed to be worn by the general inmate population as underwear. Gov. Ex. 28, Juneau Dep. at 9-10. None of Bob Barker's clients have complained about the gusset-less design of its briefs. Gov. Ex. 28, Juneau Dep. at 13.

Moreover, Viecura claims at pages 13 and 14 of its opposition brief that the Government has not identified any underpants designed for general use, which incorporate any of these features comparable with Viecura's underpants. Again, in our

16

moving brief we did an extensive comparison between a box of regular underpants, identified as women's seamless stretch-to-fit boy shorts and Viecura's imported underwear at issue.  *See* Def. Br. at 21-22; Gov. Physical Ex. 26 Women's Boy Shorts. No material difference in the design existed.  Moreover, Viecura's expert, Dr. Chughtai, is a urologist, and in the course of his examinations of patients, sees what his patients are wearing to manage incontinence.  Gov. Ex. 24, Chughtai Dep. at 7, 39-40.  He noted that with incontinence pads what is important is that the underpants used with them have an adequate stretch-to-fit design to hold the pad against the body.  Gov. Ex. 24, Chughtai Dep. at 38.  Dr. Chughtai testified that some regular stretch-to-fit underpants could be suitable for use with incontinence pads.  Gov. Ex. 24, Chughtai Dep. at 54-55, 59-61.

Nothing involving the physical properties of Viecura's unisex knit underpants easily and clearly distinguishes them from regular stretch-to-fit underpants. As noted, the Viecura underpants are not absorbent/leakproof themselves and the most important feature is their stretchiness as it gives the pants the ability to generally hold pads to the body.  As our above discussion shows, stretchiness is a common physical feature with regular stretch-to-fit underpants and non-chronically-handicapped people also use regular stretch-to-fit underpants to successfully hold various types of pads, *i.e.* maternity pads, menstrual pads, etc.

Lastly Viecura attempts to create a question of fact with regard to use of its "maternity" marketed underwear claiming that it is just another form of chronic "incontinence" use.  Pl. Opp. Br. at 11.  However, Viecura's expert clarified the temporary condition of postpartum incontinence in the following testimony:

3   Q. And it says there -- does it -- that
4   product description refer to wings seamless

17

5  maternity knit pants?

6  A. It does.

            * * *

12 Q. Okay. Do you have an understanding

13 of what Perry pads are?

14 A. I do.

15 Q. Okay. Can you explain what that is?

16  So maternity pads and Perry pads can

17  be utilized in the postpartum setting to

18  facilitate with -- basically with times of

19  incontinence and also deal with vaginal

20  discharge as well.

21  Q. If you look on Page 2 of that

22  document.

23  Do you see that it says, "Perineal

24  cold packs?"

25  A. It does.

Page 57

1 Bilal Chughtai

2  Q. Okay. Is that also one of

3  the -- does that assist the mother in her

4  comfort in the postpartum period?

5  A. It does.

6  Q. Okay.

7  A. It helps her reducing the swelling.

8  Q. Okay. Using the wings maternity

9  pads with the Perry pads or with the cold pack,

10  is that -- would that assist a mother in

11  recovering after giving birth?

12  A. Yes, it can help with that.

13  Q. And those are -- it's like a

14  temporary condition recovering from -- in a

15  normal situation, recovering from a birth?

16  A. Yeah. In most situations it does

17  help with a recovery, yes.

18  Q. Okay. And that's not a chronic

19  condition in the normal situation?

20  A. No. Postpartum is not typically a

21  chronic condition. I mean, there can always be

22  exceptions to that rule, but most commonly it's

23  not.

            * * *

Page 81

Q. So I think the idea that for most

25 women postpartum, the incontinence is transient

not chronic; isn't that true?
P.82
3 A. Yes. It's going to be
4 transient -- it typically is transient and
5 basically we recommend kegel exercises for
6 treatment.

Gov. Exhibit 24: Chughtai Dep. at 56-57, 81-82.

Thus, Viecura's own expert admitted that, while exceptions exist, postpartum incontinence, as well as bleeding and discharge, is typically not chronic. This makes logical sense because becoming a mother is not a chronic disease.

All in all, Viecura has utterly failed to show that any evidence exists in its favor sufficient to create a genuine factual dispute for resolution through a trial. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc*. 833 F.2d 1560, 1562 (Fed. Cir. 1987). Instead, the material facts dictate that Viecura's underpants are not specially designed for the permanently or chronically physical impaired and do not satisfy the criteria of subheading 9817.00.96, HTSUS.

19

## <u>CONCLUSION</u>

For the reasons provided in our motion for summary judgment and for all the above reasons, we respectfully request that this Court grant the defendant's motion for summary judgment, dismiss plaintiff's action in its entirety, and grant defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel*:
Yelena Slepak, Esq.
John Flanagan, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Attorneys for Defendant
Tel. (212) 264-0480

DATED:  New York, New York
        December 5, 2025

20

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Edward F. Kenny, a senior trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the document to which this certificate attaches, i.e., the Government's reply memorandum in support of its motion for summary judgment dated December 5, 2025; and relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 5,432 words.

<u>/s/ Edward F. Kenny</u>