UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| VIECURA INC., | : | |
| Plaintiff, | : | Consol. Court No. 21-00154 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF VIECURA INC'S SUPPLEMENTAL BRIEFING REQUESTED BY THE COURT**


BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Yelena Slepak, Esq.
John Flanagan, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 5

1) Plaintiff has not produced evidence sufficient to permit a reasonable factfinder to conclude that the subject merchandise is "specially designed" for the use or benefit of persons suffering from a permanent or chronic physical impairment "to a greater extent than for the use or benefit of others" ........ 6

2) Plaintiff has not presented evidence sufficient to permit a reasonable factfinder to evaluate the channels of distribution and end-uses for the subject merchandise, including the extent to which Plaintiff and its distributors sell or distribute subject merchandise for use by persons suffering from a "permanent or chronic" physical impairment, as opposed to an "acute or transient" condition ........ 11

3) Plaintiff has not presented evidence sufficient for a reasonable factfinder to determine the extent to which postpartum incontinence and other postpartum conditions such as bleeding, discharge, and pain constitute "permanent or chronic" conditions ........ 15

CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 5

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 1, 5

Danze, Inc. v. United States,
319 F.Supp.3d 1312 (Ct. Int'l Trade 2018). .......... 10

Inabata Specialty Chemicals v. United States,
366 F.Supp.2d 1358 (Ct. Int'l Trade 2005) .......... 14

Processed Plastic Co. v. United States,
395 F.Supp.2d 1296 (Ct. Int'l Trade 2005) .......... 7,8

Prosser v. Ross,
70 F.3d 1005 (9th Cir. 1995) .......... 4

Sigvaris, Inc. v. United States,
899 F.3d 1308 (Fed. Cir. 2018).......... 2

United States v. Titan Metals Corporation,
378 F.Supp.3d 1325 (Ct. Int'l Trade 2019) .......... 6

**Harmonized Tariff Schedule of The United States**

Chapter 61

Heading 6108

Subheading 6108.22.90 .......... 2

Chapter 98

Subchapter XVII

US Note 4(a) .......... 2

US Note 4(b) .......... 2

Heading 9817

Subheading 9817.00.96 .......... 2,5

**Rules**

USCIT Rule 30(b)(6) .......... 10, 12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| VIECURA INC., Plaintiff, v. UNITED STATES, Defendant. | : | Consol. Court No. 21-00154 |

**DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF VIECURA INC'S SUPPLEMENTAL BRIEFING REQUESTED BY THE COURT**

Defendant, the United States (the Government), submits this response memorandum to plaintiff Viecura Inc.'s (Viecura) supplemental briefing as requested by the Court in its June 3, 2026 Order. ECF No. 58.

**<u>INTRODUCTION</u>**

The Court in its June 3, 2026 Order upon consideration of Defendant's Motion for Summary Judgment, and upon consideration of the Oral Argument held on April 22, 2026, and upon other papers and proceedings had herein, determined that although Defendant moved for summary judgment on the ground that no genuine dispute of material fact exists and that Defendant is entitled to judgment as a matter of law, Defendant did not expressly frame its motion as an absence-of-evidence or insufficiency-of-proof challenge under the framework set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317, 331–22 (1986). The Court therefore requested further briefing, specifically requesting that Plaintiff address:

1) whether it has produced evidence sufficient to permit a reasonable factfinder to conclude that the subject merchandise is "specially designed" for the use or benefit of persons suffering from a permanent or chronic physical impairment "to a greater extent than for the use or benefit of others," *Sigvaris, Inc. v. United States*, 899 F.3d 1308, 1314–15 (Fed. Cir. 2018) (emphasis added); see Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9817.00.96; see also HTSUS, chapter 98, subchapter XVII, U.S. Notes 4(a)–(b); and

2) whether Plaintiff has presented evidence sufficient to permit a reasonable factfinder to evaluate the channels of distribution and end-uses for the subject merchandise, including the extent to which Plaintiff and its distributors sell or distribute subject merchandise for use by persons suffering from a "permanent or chronic" physical impairment, as opposed to an "acute or transient" condition within the meaning of HTSUS subheading 9817.00.96 and U.S. Notes 4(a)–(b); and

3) whether Plaintiff has presented evidence sufficient for a reasonable factfinder to determine the extent to which postpartum incontinence and other postpartum conditions such as bleeding, discharge, and pain constitute "permanent or chronic" conditions within the meaning of HTSUS subheading 9817.00.96 and U.S. Notes 4(a)–(b)

## BACKGROUND

Viecura's imported unisex stretch knit underwear of man-made fibers are primary classified under subheading 6108.22.90, HTSUS, and the underwear is not eligible for a secondary classification under subheading 9817.00.96, HTSUS, a duty-free provision that implements the Nairobi Protocol, because in its condition as imported there is no evidence to support the stretch knit underwear being "specially designed" for the chronically "physically or mentally handicapped". U.S. Notes 4(a) and (b) to Subchapter XVII, Chapter 98, HTSUS (implementing the Nairobi Protocol). No question of material fact exists regarding these conclusions.

The products at issue are fourteen models of Viecura unisex knit underpants. We have provided physical samples for the Court's review. Gov. Exhs. 4-18 Physical

Samples of Viecura's Unisex Knit Underpants.[1] Plaintiff claims that the snug fit of Viecura's unisex knit underpants provides the fixation, *i.e.*, the ability to keep an incontinence pad in place against the body and thus alleviate the consequences of incontinence. Resp. to Gov't SOMF 10. Viecura's unisex knit underwear is imported without any pads, Resp. to Gov't SOMF 3, and sold by plaintiff as the underwear only. Because the imported products at issue are nothing more than stretch-to-fit underwear, Viecura's unisex knit underpants have no capability to absorb bodily fluids. Resp. to Gov't SOMF 9.

Viecura cites Mr. Gallagher, its own President, as providing testimony to establish the facts comprising the "special design" of the unisex knit underpants. Specifically, Mr. Gallager has testified that the special design consists of a waistband over one inch in height and having "a lot of elastic in it". Pltf.'s Supp. Brief at 4, Gov. Ex. 1. Gallagher Dep. at 33-34. Mr. Gallagher also testified that the seamless construction of the unisex knit underpants, the elasticized leg openings, and the elastic bands sewn around the circumference of the garment, and its lack of a gusset are special features. Gov. Ex. 1 Gallagher Dep. at 33:23-25, 34:2-24, 36-38, 40-41.

Despite such claims, it is apparent that nothing about the design of Viecura's underpants at issue is a significant departure from regular stretch-to-fit underwear. Mr. Gallagher's testimony fails to materially distinguish the features of Viecura's unisex knit underwear with the features commonly found on regular stretch-to-fit underwear as exemplified by the Women's Boy Shorts - Gov. Physical Ex. 26. Further, Viecura's

---

[1] The exhibits referenced in this brief are the exhibits filed with the Government's summary judgment motion papers. See ECF Document No. 40-1.

expert, Dr. Chughtai, agrees that certain commercially available regular stretch-to-fit underwear are also capable of providing the same snug fit necessary for holding incontinence pads. Gov. Ex. 24, Chughtai Dep. at 54-55, 59-61.

In addition to showing that the evidence provided does not establish a special design, the government also established that no evidence has come to light demonstrating that the design is for the use or benefit of the chronically incontinent to a greater extent than all other users of the product.[2] Mr. Gallager did not, and cannot, provide such testimony as he does not know all the pads used with the Viecura's products and could not even be certain that any of the pads would fixate to the body sufficiently when used with Viecura's unisex stretch-to-fit underwear.[3] Ex. 1 Gallagher Dep. at 38:10-13, 79-80. When Mr. Gallagher was asked during his deposition to discuss whether a client's incontinence pad could be fixed in place by one of Viecura's unisex knit underpants sold by that client, he testified that while he believed it could, he was not certain. Ex. 1 Gallagher Dep. at 79-81. Mr. Gallagher explained that his uncertainty was due to pad design being outside of his competence, and he is not involved with the types of pads available for women's health and hygiene issues including menstrual pads. Ex. 1

---

[2] In its Supplemental brief plaintiff states "whether urinary incontinence is chronic or acute is material." *See* page 3 of Plft.'s Supp. Brief. We understand plaintiff's wording to mean that the issue is whether the wearer is using the pants because of chronic incontinence or acute incontinence is material – because plaintiff's own expert agrees that incontinence can exist as either and acute type of incontinence or a chronic type of incontinence. See Ex. 24 Chughtai Dep. at 13-23.

[3] A witness who is uncertain about the fact to which he/she is testifying cannot be the impetus of a "question of fact" as to that fact. *See Prosser v. Ross*, 70 F.3d 1005, 1009 (9th Cir. 1995) ("Because Blackman himself is at best uncertain about how much time, if any, passed before Ross sought help, we believe that no reasonable jury could return a verdict for Prosser based on [Blackman's] testimony.")

Gallagher Dep. at 79-82, Viecura Resp. to Gov't SOMF 12.

In light of the above, and as noted in our motion papers, we demonstrated that there is an absence of evidence to support Viecura's case. That is – there is a failure of proof establishing a right to "secondary" classification under the Nairobi Protocol provisions codified at subheading 9817.00.96, HTSUS, for articles specially designed for the use or benefit of the chronically physically impaired. Additionally, Viecura's customers revealed that Viecura's unisex knit underpants are also sold as maternity pants for use with peri pads (ice pads) and maternity pads for alleviating post-birth discomfort and discharge. Ex. 22, Marois Dep. at 14, 15, 18, 22, 23, 28, 34:1-4. Dr. Chughtai agrees that such maternity use is not typically attributable to a chronic condition. Ex. 24, Chughtai Dep. at 57.

**ARGUMENT**

The Government is the defendant in this case and does not have the burden to prove the claim in Viecura's complaint that the goods at issue merit a "secondary" classification under the Nairobi Protocol provisions codified at subheading 9817.00.96, HTSUS. However, through our motion papers including this supplemental memorandum, we have shown that Viecura lacks the evidence necessary to prove its case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

More specifically the Supreme Court in *Celotex* explained the burden in a summary judgment motion as follows:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

> motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322-323.

Here, there is an absence of evidence to support the Viecura's case. Further, as expressed in *United States v. Titan Metals Corporation*, 378 F.Supp.3d 1325, 1332 (Ct. Int'l Trade 2019), and as is relevant here, to create a genuine issue of material fact, the proffered evidence must be sufficient for a reasonable fact finder to return a verdict for the non-moving party. The Court in *Titan Metals* explained the standard as follows:

> To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record" because "mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am*., 775 F.2d 1107, 1116 (Fed. Cir. 1985). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "In reviewing facts, all reasonable inferences must be drawn in favor of the party opposing summary judgment." *Id*. at 255, 106 S.Ct. 2505.

*Id.* at 1332.

With this framework in mind, we turn to the Court's questions in the June 3, 2026 Order.

1) **Plaintiff has not produced evidence sufficient to permit a reasonable factfinder to conclude that the subject merchandise is "specially designed" for the use or benefit of persons suffering from a permanent or chronic physical impairment "to a greater extent than for the use or benefit of others"**

Whether or not plaintiff's merchandise is "specially designed" and, if so, whether such special design benefits the chronically disabled more than all others, are material elements of Viecura's claim. Viecura has not carried its burden of showing that sufficient evidence exists so that a reasonable fact finder could return a verdict in its favor on these material elements.

Plaintiff's claims there exists sufficient evidence showing that the merchandise is "Specially Designed" for the use or benefit of the chronically disabled. *See* Pltf.'s Supp. Brief at 4-6. Specifically, Viecura cites its own President's deposition testimony saying the special design consists of waistband having "a lot of elastic in it" because that "stops the pant moving down." Gov. Ex. 1, Gallagher Dep. at 33:15-17. The claimed special design features were that the waistband was generally over one inch in height (Gov. Ex. 1, Gallagher Dep. at 34.4) and ribbed because that structure was better for fixation. Gov. Ex. 1, Gallagher Dep. at 34:5-7. Viecura argues that the seamless construction of the unisex knit underpants, the elasticized leg openings, and the elastic bands sewn around the circumference of the garment were also special features. Exhibit 1, Gallagher Dep. at 16:10, 33:18-23, 35:21-22, 39:5, 40:12-13. Viecura has completely failed to show how these features listed by Mr. Gallagher are "special" or of "special design" for the chronically incontinent as opposed to features similarly found in regular stretch-to-fit underwear such as the women's boy shorts. These types of statements offered by Viecura to allegedly create a question of fact – not only fail to show a "special design" – they are conclusory.

In *Processed Plastic Co. v. United States*, 395 F.Supp.2d 1296 (Ct. Int'l Trade 2005) the Court addressed conclusory statements and found that such statements cannot

create a genuine issue of fact. The Court in *Processed Plastic*, stated as follows:

> "It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.' " *Applied Cos. v. United States*, 144 F.3d 1470, 1475 (Fed.Cir.1998) (*quoting Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed.Cir.1990)). Instead, a party opposing summary judgment "must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Barmag*, 731 F.2d at 835–36 (emphasis added).

*Id.* at 1304.

Here, the asserted evidence is conclusory as to the ultimate issue. Mr. Gallagher's statements, describing a waistband as having "a lot of elastic in it" and of being "generally over one inch in height" and "ribbed" fails to elaborate or substantiate how that correlates to Viecura's stretch-to-fit underpants being specially designed specifically for the use or benefit of the chronically incontinent as opposed to any other group. Similarly, the generalities stated as "seamless construction" "elasticized leg openings" and elastic bands sewn around the circumference of the garment likewise fail to establish that the underwear is specially designed. Nowhere has Mr. Gallagher explained that these proffered generalizations about the waistbands, leg openings or elastics are based upon studies or other objective criteria for adequate fixation with regard to any specific types and sizes of pads. It would seem impossible for Mr. Gallagher to provide such evidence as he acknowledged that he does not know all the kinds of pads that are or can be used with its unisex knit underpants, and he admitted that he is not involved with pad design. Resp. to Gov't SOMF 11. Mr. Gallagher also admitted that pad design is outside of his competence, and he is not involved with the types of pads available for women's

health and hygiene issues including menstrual pads.[4] Viecura Resp. to Gov't SOMF 12.

The testimony cited by plaintiff in its supplemental brief does not consist of the substance and specificity necessary to create an issue of fact so as to survive a summary judgment. That is, the non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986).

Viecura also failed to offer evidence materially distinguishing its merchandise's "features" from those found on regular seamless underwear, that is, the features of the Women's Boy Shorts - Gov. Physical Ex. 26. Mr. Gallagher confirmed that the boy shorts had a similar stretchiness to Viecura's underpants. Gov. Ex. 1, Gallagher Dep. at 146. He noted that the waistband and hemmed leg openings were similar. Gov. Ex. 1, Gallagher Dep. at 146. The boy shorts were seamless like the Viecura underpants and made on the same type of tubular fabric machine. Gov. Ex. 1, Gallagher Dep. at 143-144. Mr. Gallagher found the major difference between the boy shorts and the Viecura underpants was primarily that the boy shorts were of a more expensive composition, and that the boy shorts had a gusset in the crotch area, that is, incorporating an additional layer of fabric in the crotch area. Gov. Ex. 1, Gallagher Dep. at 144-145. Viecura believes this creates a material question of fact citing to Mr. Gallagher's unsubstantiated claim that gusset-less underwear is uncomfortable. Pltf.'s Supp. Brief at 6. Mr. Gallagher has not supported the statement with any specific findings of persons who complained of such discomfort. This bald assertion is just another meaningless

[4] Mr. Gallagher admitted that he assumes his clients have validated the ability of Viecura's underpants to properly fix its pads to the wearer. Ex. 1, Gallagher Dep. at 80: 17-25. Viecura has put forward no evidence of any pad fixation testing.

generality. Significantly plaintiff has not explained how specifically the lack of a gusset is a *feature* for the use or benefit of the chronically incontinent.

Moreover, Viecura's expert, Dr. Chughtai, is a urologist and during the course of his examinations of patients, sees what his patients are wearing to manage incontinence. Gov. Ex. 24, Chughtai Dep. at 7, 39-40. He noted that with incontinence pads what is important is that the underpants used with them have an adequate stretch-to-fit design to hold the pad against the body. Gov. Ex. 24, Chughtai Dep. at 38. Dr. Chughtai testified that certain regular stretch-to-fit underpants could be suitable for use with incontinence pads. Gov. Ex. 24, Chughtai Dep. at 54-55, 59-61. Thus, the takeaway from Dr. Chughtai's cited testimony is that it is the stretch-to-fit properties that certain regular stretch-to-fit underpants and Viecura's unisex stretch-to-fit underpants have in common that make them both suitable to hold or fixate incontinence pads.[5]

And as we discussed in Point III(B)(1)(ii) of our moving brief they are "designed like regular underwear," "go on like regular underwear," and are similar to "boy shorts" stretch-to-fit underpants. Gov. Moving Brief, ECF No. 40, at 25; Gov. Ex. 31, Forsberg Dep. at 37, 38.[6] In fact, brochures for the sale of the underpants by Cardinal Health, Viecura's largest distributor of plaintiff's unisex knit underpants state that the underpants

[5] Even if we accept for purposes of the Motion for Summary Judgment that all of Mr. Gallagher's testimony as to the physical features of Viecura's unisex stretch-to-fit underwear is accurate, it does not lead to the legal conclusion that such features comprise a "special design" meriting the application of Heading 9817. *See Danze Inc. v. United States*, 319 F.Supp.3d 1312 (Ct. Int'l Trade 2018).

[6] Viecura in its supplemental brief at page 7 refers to Mr. Forsberg, Essity's, Rule 30(b)(6) witness as "*government* witness." (italics in original). Mr. Forsberg is an employee of Essity, one of Viecura's three main customers who appeared for disposition testimony after the Government issued Essity a deposition subpoena. As such, Mr. Forsberg is not employed or otherwise controlled by the Government.

can be used alone or with pads. Gov. Ex. 22, Marois Dep. at 22. Further, as we discussed in Point III(B)(1)(i) of our moving brief the Viecura unisex knit underpants are very similar in construction and quality to the Bob Barker disposable knit underpants distributed as uniform underpants in jail institutions. Gov. Moving Brief, ECF No. 40, at 20-21.

Nothing involving the physical properties of Viecura's unisex knit underpants materially distinguishes them from regular stretch-to-fit underpants. Plaintiff has not produced sufficient evidence to show that the features of its underpants are specially designed, and importantly, how they are specially designed for the chronically incontinent more than any other persons. Viecura's underpants are not absorbent/leakproof themselves and the most important feature is their stretchiness as it gives the underpants the ability to snuggly hold the pads to the body. As our motion papers and the above discussion shows – stretchiness is a common physical feature with regular stretch-to-fit underpants and non-handicapped people also use regular stretch-to-fit underpants to successfully hold various types of pads, *e.g.*, maternity pads, menstrual pads, etc.

Accordingly, Viecura has not pointed to or presented evidence sufficient to demonstrate that its underwear is "specially designed" for the use or benefit of persons suffering from a permanent or chronic physical impairment "to a greater extent than for the use or benefit of others".

**2) Plaintiff has not presented evidence sufficient to permit a reasonable factfinder to evaluate the channels of distribution and end-uses for the subject merchandise, including the extent to which Plaintiff and its distributors sell or distribute subject merchandise for use by persons suffering from a "permanent or chronic" physical impairment, as opposed to an "acute or transient" condition**

Viecura has not presented sufficient evidence to evaluate the channels of distribution and end-uses of its underwear. Viecura has described its business as being a contract manufacturer for larger health-oriented client companies. Ex. 1, Gallagher Dep. at 14:20-24. Because of the business-to-business nature of Viecura's operations, Viecura was not in direct contact with the end users and doesn't have actual knowledge of how they use their underwear product. Ex. 1, Gallagher Dep. 134. The client companies who bought the Viecura unisex stretch-to-fit underwear and thereafter sold or had knowledge of the end users of such products, were Essity, Attindas, and Cardinal Health. Exhibit 2, Sequeira Dep. at 7, 8. Because Viecura could not present any evidence of end use, the Government subpoenaed representatives of each of the three client companies in order to gather facts as to the end use of the Viecura unisex stretch-to-fit underwear products. *See* Gov. Exhibit 22: Marois Deposition (Cardinal Health's Rule 30(b)(6) representative), Gov. Exhibit 23: Dietrich Deposition (Attindas's Rule 30(b)(6) representative) and Gov. Exhibit 31: Forsberg Deposition (Essity's Rule 30(b)(6) representative).

To the Court's question on channels of distribution, we noted in our brief in chief and in our reply, the evidence of end use to the extent available, was provided by the entities and witnesses from Cardinal Health, Attindas and Essity. Gov. Moving Brief, ECF No. 40, at 6-8, 15, 16, 23-27. Viecura's Vice President of Sales and Marketing confirmed that Cardinal Health comprises 60 percent of Viecura's underpants sales, while Essity and Attindas amount to the remaining 40 percent - combined. Gov. Ex. 2, Sequiera Dep. at 15.

We provided evidence that the largest trackable percentage of plaintiff's unisex knit underpants go to acute care hospitals. Ex. 22, Marois Dep at 17-19, Ex. 30, Marios

Declaration, Dietrich Dep. at 8-9. Acute care hospitals are the situs of maternity wards and where general surgeries take place which can bring about the temporary incontinence. Ex. 22, Marois Dep. at 31:21-23, Ex. 24, Chughtai Dep. 13:20-25, 14:2-4, 18:17-25, 30:17-25, 56, 57.

More specifically, Cardinal Health's Ms. Marois testified that 43 percent of the Viecura unisex knit underpants were sold directly from Cardinal Health to acute care facilities and 56 percent to their distribution groups.[7] Gov. Ex. 22, Marois Dep. at 17-18. Ms. Marois showed that maternity care users are a significant segment of the acute care hospital market regarding Viecura's imported goods at issue. Gov. Ex. 22, Marois Dep at 18-23 and Gov. Ex. 30 Marois Dec. (listing includes units of 700 Series M (maternity) underpants sold to hospitals). The evidence also shows that Cardinal Health sells Viecura's underpants in part to assist in fixation, *i.e.*, hold a bandage in place over an abdominal wound. Gov. Ex. 22, Marois Dep. at 24. Cardinal Health's catalog features Viecura's stretch knit underpants and stretch mesh underpants with advertising copy which reads "[u]se alone or to secure liners, pads or wound dressing in place." Gov. Ex. 29, Cardinal Health Catalog.

Mr. Jeffrey Dietrich, Director of Marketing at Attindas Hygiene Partners testified that the overwhelming majority of the Viecura underpants Attindas buys is sold to hospitals. Gov. Ex. 23, Dietrich Dep. at 8-9. He said that 90 percent of the Viecura underpants go to hospitals for post-partum use and some to nursing homes and the home

[7] Ms. Marois testified that the "distribution partners" were competitor type entities to whom Cardinal Health sells. Ms. Marois says Cardinal Health doesn't know what the customer base of the distribution partners is comprised of. Gov. Ex. 22 Marois Dep. at 18.

care network. Ex. 23, Dietrich Dep. at 8-9.

Plaintiff claims that utilizing the stretch-to-fit underwear to assist in fixation of abdominal bandages as Cardinal Health's representative testified, is a "fugitive use" and creates a question of fact. Pltf.'s Supp. Brief at 7. However, we addressed plaintiff's arguments in our reply brief and incorporate those responses as if fully set forth here. Gov Reply Brief, ECF No. 53, at 13-14. Additionally, FDA regulations are not controlling for tariff purposes and cannot therefore create a question of fact.[8] Notwithstanding, none of plaintiff's arguments refute that certain of plaintiff's customers testified that they can or are being used by acute care hospitals for wound care.

Moreover, we explained in our motion papers that Plaintiff's expert Dr. Chughtai testified that the unisex stretch-to-fit underwear when used with a pad, can assist in alleviating issues involved with involuntary urine discharge associated with both chronic and temporary incontinence. Gov. Ex. 24, Chughtai Dep. at 82. We noted that plaintiff's expert Dr. Chughtai described several conditions wherein temporary incontinence is common including the following: (1) functional incontinence, the result of a loss of the ability to get to a toilet, *e.g.,* during the recovery from a hip-replacement or other lower-extremity orthopedic procedure, Gov. Ex. 24, Chughtai Dep. at 13, 14, 18, 19; (2) transient incontinence brought about by a change in medication, Chughtai Dep. at 18, 19;

[8] *Inabata Specialty Chemicals v. United States*, 366 F.Supp.2d 1358, 1363 (Ct. Int'l Trade 2005) ("Whatever FDA labeling or marketing regulation restricts the manner in which CS preparations are sold does not control for tariff purposes. *See Swift & Co. v. United States*, 2 Cust.Ct. 180, 182 (1939). Further, definitions and classifications of other agencies do not control tariff classifications. *Marubeni Am. Corp. v. United States*, 17 CIT 360, 369, 821 F.Supp. 1521, 1528–29 (1993), *aff'd*, 35 F.3d 530 (Fed.Cir.1994) (vehicle regulated as a "truck" by other agencies classified for tariff purposes as passenger vehicles).")

(3) postpartum stress incontinence, Chughtai Dep. at 17, 18; and, (4), transient incontinence brought about by urological surgery, *i.e.* prostate or bladder surgery. Chughtai Dep. at 30, 31.

Therefore, Viecura has not and cannot point to or present evidence that would be sufficient to allow a reasonable factfinder to find that its underwear is sold or distributed for use by persons suffering from a "permanent or chronic" physical impairment, as opposed to an "acute or transient" condition.

**3) Plaintiff has not presented evidence sufficient for a reasonable factfinder to determine the extent to which postpartum incontinence and other postpartum conditions such as bleeding, discharge, and pain constitute "permanent or chronic" conditions**

In our reply brief we cited plaintiff's own medical expert, Dr. Chughtai, who stated, unequivocally, that post-partum conditions of incontinence as well as bleeding, discharge and pain are ***typically transient*** conditions that occur while a mother is recovering from childbirth. Gov. Exhibit 24: Chughtai Dep. at 56-57, 81-82. Plaintiff in its supplemental brief has provided **no** evidence as to whether post-partum bleeding, discharge and post-partum pain constitutes "permanent or chronic" conditions. Dr. Chughtai testified only that "some" mothers can have continuing incontinence.

Thus, Viecura cannot point to or present evidence that would be sufficient to allow a reasonable factfinder to find that most post-partum incontinence is chronic and that most mothers incur chronic post-partum bleeding, discharge and post-partum pain.

## CONCLUSION

For the reasons provided in our motion for summary judgment and for all the above reasons, we respectfully request that this Court grant defendant's motion for summary judgment, dismiss this action in its entirety and grant defendant such other and further relief as may be just and appropriate.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

By: /s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Attorneys for Defendant
Tel. (202) 305-5216

*Of Counsel*:
Yelena Slepak, Esq.
John Flannigan, Esq.
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

DATED: New York, New York
August 27, 2026

**CERTIFICATE OF COMPLIANCE**

I, Edward F. Kenny, a senior trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the document to which this certificate attaches, i.e., the Government's Memorandum of Law in Response to Plaintiff's Supplemental Briefing Requested By The Court dated August 27, 2026; and relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 4,084 words.

/s/ Edward F. Kenny