**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JOSEPH A. LAROSKI, JUDGE**

| | | |
|---|---|---|
| **VIECURA, INC.,** | | |
| **Plaintiff,** | | |
| ***v.*** | | **Consol. Court No. 21-00154** |
| **UNITED STATES,** | | |
| **Defendant.** | | |

**PLAINTIFF'S REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF**

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Richard O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: September 10, 2026

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JOSEPH A. LAROSKI, JUDGE**

---------------------------------------------------------------------- X

| | | |
|---|---|---|
| **VIECURA INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| ***v.*** | : | **Consol. Court No. 21-00154** |
| | : | |
| **UNITED STATES,** | : | |
| | : | |
| **Defendant.** | : | |

---------------------------------------------------------------------- X

**PLAINTIFF'S REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF**

## I. INTRODUCTION

In accordance with the Court's Order of August 28, 2026, ECF 65, plaintiff, Viecura Inc. ("Viecura") submits this reply to the government's supplemental brief , ECF 64.

Defendant previously filed a Motion for Summary Judgment in this action, ECF 40, which concerns the issue of whether plaintiff's imported undergarments, which form part of a two piece incontinence control system, qualified for secondary classification under Harmonized Tariff Schedule (HTS) subheading 9817.00.96 as "Articles specially designed or adapted for the use of the blind or other physically or mentally handicapped persons; parts and accessories (other than parts and accessories of braces and artificial limb prosthetics) that are specially designed or adopted for use in the foregoing articles; Other" [than articles for the blind]. As earlier briefing has indicated, there is a material dispute of fact concerning two significant elements of plaintiff's claim: (1) whether the articles are "specially designed or adapted" for the use or benefit of handicapped persons; and (2) whether the articles are designed to treat chronic, rather than transient incontinence. The government concedes that chronic incontinence is a "handicap" for purposes of the statute.

The Court previously noted that the Government's summary judgment motion was not based on "a potential absence of evidence or insufficiency of proof regarding essential elements of Plaintiff's claim." The Court requested supplemental briefing on the issue of whether summary judgment might be entered for defendant on this basis, pursuant to the rule set out in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Given a "second bite at the *Celotex* apple", the government fails again to show that summary judgment is appropriate.

## II. THE GOVERNING STANDARDS

In the Federal courts, the summary judgment process involves a two-step burden-shifting framework. Once the moving party satisfies its initial burden of identifying to the court the portions of the record it believes demonstrate the absence of a genuine issue of material fact, the responsibility shifts to the non-movant to affirmatively demonstrate that a genuine dispute of material fact exists for trial. *Celotex Corp, supra. v. Catrett*, 477 U.S. 317, 324 (1986). To survive summary judgment, the non-movant cannot simply rely on pleadings or a "mere scintilla of evidence[;]" but must instead, "go beyond the pleadings" to designate specific, outcome-determinative facts that are disputed. *Celotex Corp, supra: Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Particular record evidence may include depositions, documents, admissions, affidavits, or by showing that the moving party's cited materials fail to establish the absence of a dispute or rely on inadmissible evidence. *See* USCIT Rule 56(c).

In performing this task, two important rules bind the court: (1) the court must view all evidence in the light most favorable to the non-movant and may not draw inferences adverse to the non-movant, [2] and (2) the Court cannot weigh evidence, assess witness credibility, or resolve factual disputes during the period in which summary judgement is brought forth. *ICCS USA Corp.*

[2] The government's Supplemental Brief, ECF 64, does not mention this requirement.

*v. United States*, 357 F. Supp. 3d 1314, 1319 (Ct. Int'l Tr. 2018), aff'd, 952 F.3d 1325 (Fed. Cir. 2020): *SGS Sports Inc. v. United States*, 620 F. Supp. 1365 (Ct. Int'l Tr. 2023)

Plaintiff's Supplemental Brief, ECF 61, supported by extensive citations to record evidence, identified numerous disputed issues of fact requiring trial. These include a dispute concerning whether the eight (8) special design features incorporated in the garments, render them "specially designed" for use in a two-piece incontinence fixation pant system. Nowhere in its initial motion nor its supplemental brief, does the government address these eight features holistically. Instead, it attempts to argue that other undergarments, not designed for the handicapped, contain one or more similar features (but not all eight). But the garments at bar feature all eight special design features. To the extent there is dispute as to whether a garment containing all eight of these features are "specially designed," the Court must view this evidence in the light most favorable to the non-movant, i.e., Viecura. There are also material disputes of fact concerning whether post-partum incontinence is a "chronic" condition, and the extent to which the subject garments are used to treat post-partum incontinence. To address these issues, this Court must, at a minimum, hear the trial testimony of, and evaluate the credibility of, plaintiff's expert witness, Dr. Bilal Chugtai and its percipient witness Joseph Gallagher. These disputed issues cannot be decided on summary judgment. "Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions", *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 255 (1986); *Beh v. Dean*, 2025 U.S. Dist. LEXIS 271061 (N.D. Ga. 2025).

The government's supplemental summary judgment motion fares no better than the first. Plaintiff stands on its supplemental brief, ECF 61 and evidence cited therein. It uses this brief mainly to point out the legal defects in the Government's Supplemental submission, ECF 64.

## III. FLAWS IN THE GOVERNMENT'S SUPPLEMENTAL SUBMISSION

The government's supplemental submission is a mélange of cherry-picking testimony and asking the Court to weigh it, while asking the court to draw inferences against the non-moving party.

### A. Weighing Joseph Gallagher's Testimony

The government repeatedly cherry-picks statements from the deposition of Joseph Gallagher, plaintiff's President and witness, and weighs it – or asks the Court to do so.

Thus, the government argues that Mr. Gallagher's testimony did not materially distinguish features of Viecura's garments from a feature found on certain "boy shorts," ECF 65 at p.4. But Mr. Gallagher testified that plaintiff's garments have multiple features which dedicate them to being used with absorbent pads in a two-piece incontinence fixation pant system – including specially designed wide waistbands with ribbed construction, seamless construction combined with circular knit elastic bands, elasticized leg openings, a gusset-less construction (because the wearer's genitals do not make contact with the pant) and other features. *See* ECF 61 at p. 4-5 and record evidence cited therein. The government improperly asks the Court to weigh evidence. *See e.g.*, *Clark v. Circle K Stores*, 2026 U.S. Dist. LEXIS 74394 (M.D. Fl., April, 2026) (selectively quoting a plaintiff's deposition testimony while omitting reference to other statements in the deposition is improper, and defeats a summary judgment attempt).

Defendant also argues that because Mr. Gallagher was unable to conclusively answer a hypothetical about whether his pant would hold an absorbent pad sold by one of his customers in place — because he was not an expert in pad design — this somehow established the absence of a triable issue of fact. *See* ECF 64, at p.4-5. This analysis is improper on several levels. Mr. Gallagher designs and sells the pants for use with various types of absorbent pads. He knows which

features dedicate the pants to use with pads. The judgment about *which* pad is to be paired with an incontinence pant is made by a clinician or caregiver, not Mr. Gallagher, and will be based on factors such as the patient's body size and shape and physical condition. There are many instances where a specially designed article falling under HTS subheading 9817.00.96 is applied by a medical professional or caregiver. The efficacy of the article in a particular application is not determined by the manufacturer or importer. *See, e.g., Nobelpharma USA Inc. v. United States*, 21 C.I.T. 47 (1997) (dental implants); *Travenol Labs v. United States*, 17 C.I.T. 69 (1993) (dialysis instruments); *Starkey Lab. Inc. v. United States.*, 6 F. Supp. 2d 910 (Ct. Int'l Tr. 1998) (parts for hearing aids). To the extent efficacy in use may be the province of a practitioner or clinician, and may be relevant to the issue at hand, it is not necessarily the manufacturer or importer who holds that information. In this case, plaintiff's witness, Dr. Chugtai, may be the appropriate person to put such a question.

And the government asks the Court to infer that Mr. Gallagher's lack of expertise in pad design means that he cannot testify about the "special design" of the pant. This asks the Court to draw an inference against Viecura at this stage of litigation, which the Court may not do.

The government also asks the court to draw an inference —that because its "boy short" is made of stretchable fabric and is not used to treat incontinence, Viecura's pant, made of similar fabric, is not so used. The Court may not draw such an inference.

The government also makes a conclusory allegation that Mr. Gallagher's deposition testimony fails to show how the "special design" of the pants assists in the treatment of incontinence, *see* ECF 65 at 7. But Mr. Gallagher has testified that the special design features of the pant are designed to keep an absorbent pad firmly in place to avoid the leakage or spillage of urine. "I think anatomically shaped is more for the comfort, because you only need certain areas of the pad. For

example, they're wider on the top of each end of the pad for collection of urine, et cetera. So they're shaped a certain way to perform the function. I'm not involved in the design of the pads. That's what other companies do." *See* Gallagher Dep, ECF 40, Gov. Ex. 1, at 29:33 – 30:5.

The government also suggests that because the pants "go on like regular underwear", this eliminates any question of fact regarding special design or of the pants' use for the benefit of handicapped persons. *See* ECF 65 at 10. While one may observe that there are limited ways to don underwear (one leg at a time, presumably), plaintiff's pants are not donned alone, but with a fixed absorbent pad selected by a clinician. Moreover unlike "regular underwear," plaintiff's goods are often sold with literature showing how the products should by put on by a nurse, caregiver or clinician. *See* ECF 40-1, Ex. 3, at Bates No. 00159-168. What in many cases may distinguish plaintiff's merchandise from so-called "regular underwear" is not *how* they go on, but rather *who puts them on the* patient and the fact that they are match to a pad when donned – a matter to which Dr. Chugtai can testify at trial, followed by a determination of the Court, as trier of fact, as to how much *weight* the testimony should be accorded. Again, this is not an issue to be decided on summary judgment.

**B. <u>Weighing Dr. Bilal Chugtai's Testimony</u>**

The "cherry picking" that the government did with Mr. Gallagher's testimony is also attempted with regard to the testimony of plaintiff's witness, Dr. Bilal Chugtai. Defendant notes , ECF 65 at 10, Dr. Chugtai's testimony that certain stretch-to-fit pants might be used to hold an absorbent pad, but disregards Dr. Chugtai's testimony that this is a supposition, a hypothetical about a "fugitive use" and that the Doctor testified elsewhere that he was familiar with the use of plaintiff's merchandise to fix absorbent pads in a two-part incontinence fixation system. The government's "takeaway" from Dr. Chugtai's testimony is that only the "stretch-to-fit" property

of the subject merchandise is important in treating incontinence. This reasoning fails on several fronts. First, defendant does not get to identify a "takeaway" from Dr. Chugtai's testimony; that is the province of the Court alone, after hearing the entirety of Dr. Chugtai's testimony in open court, and having a chance to assess his credentials, demeanor and credibility.

Similarly, the testimony of Mr. Marois of Cardinal Health that the subject garments could be used "alone or with pads" does not establish whether use without pads would be a fugitive use or would treat incontinence. Certainly, there is no evidence that Cardinal Health sells the merchandise for use without pads, and Cardinal's advertising materials suggest quite the opposite. *See* ECF 40-1, Ex. 21. To the extent the government seeks to have the Court draw an inference against plaintiff based on this testimony, it is improper at the summary judgment stage.

Similarly, Dr. Chugtai's testimony that postpartum incontinence is frequently transient, see ECF 61, at 15, must be weighed against (1) Dr. Chugtai's testimony that postpartum incontinence is often chronic, and can be lifelong and (2) the fact that postpartum incontinence represents only a minor proportion of all incontinence. Similarly, the fact that a certain proportion of the merchandise is sold to what defendant contends are "acute care" hospitals , ECF 61 at 12-13, and that such hospitals are the situs of maternity wards stands in contrast to evidence showing that hospitals are often associated with nursing homes which are not "acute care" facilities, and that 90% of the pants sold in the United States are sold to institutional care facilities. *See* ECF 40-1, Gov. Ex. 1, Gallager Dep. at p. 68. What defendant seeks to do here is have the Court draw an inference adverse to plaintiff, which the Court may not do on summary judgment.

With respect to Dr. Chugtai's testimony, the government makes the same mistake of selectively quoting deposition testimony and asking the Court to draw inferences – wholly inappropriate on a motion for summary judgment. *See Clark v. Circle K Stores, Inc, supra*.

### C. Triable Issues of Fact Remain as to the Use of the Pants

Triable issues of fact remain as to the use of the pants and the pervasiveness of such use. The government improperly asks the Court to draw inferences from conflicting evidence.

Emblematic of this is the government's claim that "the largest trackable percentage of plaintiff's unisex knit pants go to acute care hospitals", which are "the situs of maternity wards where general surgeries take place which can be about the temporary incontinence". ECF 65, at 12-13. The government asks the Court to draw an inference that the greatest use of the subject merchandise is for treatment of temporary post-partum incontinence. But the testimony also shows that sales to hospitals include sales to "nursing homes that are attached to hospitals," ECF 61 at p, 10, ECF 40-1, Gov. Ex. 31, Forsberg Dep. at 30. And plaintiff's witness Mr. Gallagher testified that the greatest use of the subject merchandise in hospitals was in the geriatric ward, ECF 40-1, Gov. Exhibit 1, Gallagher Dep. at 30:16 – 31:3, ECF 61 at 10, and that the elderly are the most common users of the garments and are the most common sufferers of chronic incontinence. *See* ECF 45-2, Plaintiff Exhibits 2, 3. The record also shows that a hospital admission is not used to treat transient incontinence. *See* ECF 40-1, Gov. Exhibit 25, Chugtai Dep. at 20:13 – 12:22:7. And Cardinal Health's Mr. Marois, from whose testimony the government would have the Court draw the inference, also testified that 56% of his company's sales were to distributors, and that he lacked knowledge of the end-use of these pants. *See* ECF 65 at 11-12. And the government's requested inference asks the Court to rely upon a claim – improper testimony by government counsel, really – that all post-partum incontinence is transient, a notion directly contradicted by the testimony of plaintiff's witness Dr. Chugtai, who testified that post-partum incontinence can be chronic and, in some cases lifelong. *See* ECF 61 at p. 12. ECF 40-1, Gov. Ex. 20:18 – 28:5. The notion is also

belied by a Canadian study showing that 60% of post-partum women are still incontinent 12 months after childbirth. *See* ECF 40-1, Gov. Ex. 1, Gallagher Dep. at 155.

At trial, plaintiff will present the evidence of Dr. Chugtai, a qualified physician with expertise in post-partum incontinence — all forms of urinary incontinence — who will testify as to the types of incontinence the subject merchandise is designed to treat. He will also provide testimony at length as to the prevalence and duration of post-partum incontinence. The government has identified no witness with expertise to testify on these matters, The government's supplemental brief seeks to have this Court decide, by drawing an improper inference, a point that the government is unlikely to be able to win at trial through a preponderance of the evidence. This Court must decline the invitation; it would be reversible error to accept it.

## CONCLUSION

Plaintiff Viecura Inc. has placed before the Court more than sufficient evidence to point to the existence of triable issues of fact that preclude the award of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) do not apply here. The government's supplemental memorandum repeatedly asks this Court to weigh evidence and to draw inferences adverse to plaintiff, the non-moving party. Any of these are sufficient to defeat the government's motion for summary judgment. The Court should deny that motion and set this case for trial.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

/s/ John M. Peterson
John M. Peterson
Richard O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

SULLIVAN & LYNCH, P.C.
*Counsel for Plaintiff*
Herbert J. Lynch
800 Turnpike Street
Suite 300
North Andover, MA 01845

Dated: September 10, 2026

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JOSEPH A. LAROSKI, JUDGE**

| | | |
|---|---|---|
| **VIECURA, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| ***v.*** | : | **Consol. Court No. 21-00154** |
| | : | |
| **UNITED STATES,** | : | |
| | : | |
| **Defendant.** | : | |

## CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein , of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 2,755 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein